|168  219|
·|184  261|

# William E. Lilly *v.* Person & Riegel, Appellants.

*Contract—Building contract—Lost paper—Evidence.*

Plaintiff contracted in writing with defendants to construct a building for them for $17,550. One of the specifications provided that he should tear down an old building and use such materials in the construction of the new one as were suitable, " the net value of such materials to be reckoned at the amount stated in the contractor's bid, and the said amount to be deducted from the gross contract price." The plaintiff's bid for the new work and for the material of the old building was in writing, but had been lost or destroyed by the defendants, and there was no written evidence

of the amount he had agreed to allow for the old material. *Held*, that it was competent for the plaintiff to show that his original bid was in excess of the amount stated in the contract, and that he wrote below his bid that he allowed the excess for the old building.

*Contract—Addition to written instrument after signature—Evidence— Question for jury.*

Where an addition to a contract is written on the page following the signatures, and it appears that there was ample room for the addition on the same page with the signatures, and the evidence is conflicting as to whether or not the addition had been made with plaintiff's knowledge before the agreement was signed, the question is for the jury to determine whether or not the addition is binding on the plaintiff.

*Building contract—Change in specifications—Delay—Penalty.*

A building contract provided that the builder should forfeit a certain sum for each day that the building remained unfinished after the time fixed by the agreement for its completion. The owners reserved the right at any time during the progress of the work to make any alterations in the plans and specifications. The contract provided that any change in the plans " either in quantity or quality of the work " should be executed by the plaintiff " without holding the contract as violated or void in any other respect." During the progress of the work, a change was made in the material for the front of the building from brick and granite to Indiana stone with carved panels and frieze. *Held*, that plaintiff was not responsible for delay necessarily resulting from the alterations in the work directed by the owners.

Argued March 11, 1895. Appeal, No. 79, July T., 1894, by defendants, from judgment of C. P. Northampton Co., April T., 1893, No. 43, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a building contract. Before REEDER, J.

At the trial it appeared that plaintiff and defendants on May 19, 1891, entered into a contract in writing, the material portions of which were as follows :

" That the said party of the first part for and in consideration of the sum of money as hereinafter mentioned to be paid by the said party of the second part, as well as the covenants and agreements hereinafter recited by the said party of the second part to be kept and performed, doth by these presents covenant, promise and agree to and with the said party of the second part as follows, to wit:

" That the said party of the first part shall and will in a good, workmanlike manner, according to the best of his art,

skill and ability, build, erect, finish and complete, and the materials for the same wholly provide, a four-story brick and stone building, for the purposes of a store, offices and lodge rooms on a lot or piece of ground situate on the west side of Main street in the Borough of Bethlehem, Pennsylvania, the whole of said work to be performed and all of said materials to be furnished in conformity with the plans, specifications and elevations of the same as made by A. W. Leh, the architect, hereby appointed by the said party of the second part, which plans and specifications bear even date herewith and are marked by the initials of the parties hereto, and which are to be considered as forming part of this agreement as if herein fully set forth.  That the said party of the first part further agrees that the work aforesaid shall be commenced and diligently prosecuted and the materials promptly furnished and the said building shall be wholly completed according to the terms of this contract and ready for use and occupancy on or before the fifteenth day of October next, the store room September 15 next, and that for each and every day the same (store room) remains uncompleted after the said fifteenth day of September next the said party of the first part shall and will forfeit the sum of ten dollars ($10) per day for each of the first ten days after such date, and for each and every day after the ten days following said fifteenth day of September the sum of ten dollars ($10) per day, unto the said party of the second part, which said sum so forfeited shall and may be deducted and retained by the said party of the second part from and out of the final payment to be made unto the said party of the first part under these articles.

" That if the said party of the second part shall at any time alter or change the aforesaid plans or specifications either in the quantity or quality of the work, the said party of the first part will execute the same without holding this contract as violated or void in any other respect, and the value, costs and charges of such alterations shall be agreed upon by the parties and added to this contract in writing before the same are executed, and if so agreed upon and noted the value of such changes or difference shall be added to the amount to be paid under this agreement or deducted therefrom as the case may be, it being expressly understood that no extra work of any

kind shall be performed or extra materials furnished by the said party of the first part unless thereto authorized in writing by the said party of the second part, who may from time to time make such alterations in the aforesaid plans and specifications upon the terms aforesaid as to him shall seem meet.

" And the said party of the second part in consideration of the work and labor being done and materials provided as hereinbefore required, and all other of the agreements, covenants, provisions and stipulations herein set forth being kept and performed by the said party of the first part, doth covenant, promise and agree to and with the said party of the first part, that they will truly pay or cause to be paid unto the said party of the first part the sum of Seventeen thousand Five Hundred & Fifty dollars in manner following, to wit:

" In witness whereof we have hereunto set our hands and seals this the day and year first above written.

                    " W. E. LILLY.      (SEAL)
                    " M. J. PERSON.     (SEAL)
                    " EDW. E. RIEGEL.   (SEAL)

" Alterations on pages 1 and 2 were made before the signing.
" Also addition on page 6.
" Executed and delivered in presence of

                    " GRANT J. SNYDER.
                    " F. S. SCHWAB, JR.

" The plans and elevations which form part of this agreement are 10 inches less than the width of the building is intended to be. In all cases the details will be followed in preference to $\frac{1}{8}''$ and $\frac{1}{4}''$ scale drawings."

One of the specifications was as follows:

" Also tear down the present building occupied by Hunt (Hat store) all of the material from the tearing out of the building to belong to the Contractor and to become his property, such material as is suitable and fit to be used in the construction of the new subject to the approval of the Architect or owners, can be used in the new building, the rest to be removed from the premises at once, the net value of such materials to be reckoned at the amount stated in the Contractor's bid, and the said amount to be deducted from the gross contract price."

The following memorandum was subsequently signed by plaintiff at defendants' request:

"BETHLEHEM, Pa.,——— —, 189–.

"I hereby agree to make the following changes in above contract.

"I propose to erect and finish in complete and satisfactory manner a stone front facing (Indiana stone rock faced) and stone carved panels and frieze, where specified terra cotta and brick, for the sum of $324 in addition to the above named contract.                                    W. E. LILLY.

"Witness—FRANK J. SNYDER."

Plaintiff bid for the work before the contract was executed but the bid was lost or destroyed. He claimed that his bid was $17,880 and that he had written below his bid that he would allow $300 for the old building; that defendants then said that if he would throw off $30.00 they would give him the contract; and that by taking off the $300 and the $30.00 the price was reduced from $17,880 to $17,550, and that in that way they arrived at the net amount, $17,550, inserted in the contract. This was denied by defendants, and it was contended on their behalf that the value of the old material was to be deducted from the contract price.

The contract was signed and sealed on the fifth page and plaintiff claimed that the alteration marked on page six, as follows:—"the plans and elevations which form part of this agreement are ten inches less than the width of the building is intended to be. In all cases the details will be followed in preference to $\frac{1}{8}''$ or $\frac{1}{4}''$ scale drawings,"—was not made before or at the signing of the contract, and that his attention was not called to it. He claimed $525, the value of the ten inches additional width and extra work. Defendants contended that under a proper construction of the contract the erection was clearly called for ten inches wider than the original plans, and that an inspection of the agreement and an attestation clause thereof disclosed the fact that the addition on page six was part of the paper, and upon its face showed the assent of the plaintiff thereto.

The defendants claimed to recoup or set off the amount of damages liquidated by the contract at $10.00 per diem for fif-

teen days' delay after Sept. 15, 1891, in completing the storeroom for occupancy, amounting to $150, and also damages for loss of rent suffered through noncompletion of the building from October 15 to December 1, 1891, amounting to $97.52. Plaintiff claimed that the forfeiture of $10.00 per diem after September 15 should not be enforced, because the change in the building, agreed to in writing, by which the front was to be of Indiana stone instead of terra cotta and brick, was the cause of the delay.

The court charged in part as follows:

" [The testimony of the plaintiff is that he bid $17,880, and that he also offered $300 for the old material in the building. These specifications were drawn by the architect for the purpose of having the builders bid upon the building. The bid was so made. He then claims that after the bid was so made they said to him that if he would agree to reduce his bid to $17,550, they would give him the contract. He says that that was deducting the amount that he bid for the old material, and didn't include that; that the bid was so made, and the contract was entered into, which was a separate agreement, one of the conditions of which was that these specifications, upon which the bids were invited, and upon which the bids were made, should be a part of that contract.

" It is claimed by the defendants that the difference of $300, for the material in the old building, shall be accredited upon the contract price, namely $17,550, which would make the amount of cash that he was entitled to receive upon his contract $17,250.

" It is contended upon the part of the defendant that the amount which he was entitled to receive was $17,550 cash, the $300 which he bid for the old material in his contract having been deducted from the gross contract price, and $17,550 being the net contract price after such deduction. This is a question of fact, gentlemen of the jury, for your determination. If you find that that was agreed to be done, and find there was no specific mention made of it in the contract itself, and find it was intended that that should be excluded as a credit upon this contract, that was a mutual omission or a mutual mistake of these parties when they entered into the contract, and therefore the contract could be reformed as to that provision.

If you find that the plaintiff's theory is the correct one, and that his bid for $17,880 was handed in, which was afterwards reduced to $17,550, that the $300 was deducted then for the purpose of ascertaining the contract price, and it was so put in the contract at $17,550, then of course they are not entitled to have it credited now.  If it was not a mutual mistake, if the defendants did not so intend it and the contract was entered into for $17,550, they understanding and intending that the $300 should be accredited upon the $17,550, no matter what the plaintiff may have understood about it, they are entitled to have that $300 taken as a credit upon the contract price, as stipulated in the contract, $17,550.  That is to say, that if you believe that they, by mutual agreement, deducted the $300 before fixing the $17,550 as the contract price, then they have no right to deduct it now.  If you believe it was not the intention of the defendants to deduct it then, but it was their intention and supposition and belief that it would be deducted afterwards, no matter how much the plaintiff may have been under a wrong impression, then it must be deducted and credited as a credit upon this contract price now.] [1]

" [After the building had been staked out, and, according to the testimony of the plaintiff, after he had commenced some work upon the construction of the new building, a change was made.  The defendants purchased a strip of property, 10 inches in front, running in depth 150 feet, and 12 inches wide in the rear, from the adjoining property belonging to William D. Luckenbach.  After the purchase of this property they desired to extend their building the entire width of the property that they owned; that is, the entire width of the old Hunt property, together with this strip of from 10 to 12 inches that they purchased from Luckenbach.  Appended to the contract there is an additional clause upon what was the blank page originally of this contract as drawn, and it bears in writing the number 6.

" The clause reads as follows: ' The plans and elevations which form part of this agreement, are 10 inches less than the width of the building is intended to be.  In all cases the details will be followed in preference to ⅛ and ¼ scale drawings,' and on the previous page, page 5, where the signatures and seals of the parties to this contract are attached under the

clause of attestation, we find the following : 'Executed and delivered in the presence of ———. Alterations on pages 1, 2, were made before signing,' (that means interlineations on pages 1 and 2 were made before signing,) 'also addition on page 6.' Then it is signed by two attesting witnesses whose testimony you have heard.

" The plaintiff now seeks to recover for the extra building on this 10-inch additional purchased from Luckenbach. The defendants claim that he cannot recover for that extension of the building for the reason that it is in this contract. If it is in this contract, then I say to you, as a matter of law, he cannot recover. If it is not in this contract, he can recover. It is written in the contract. Had it been written in the body of the contract, so that there would have been no controversy about it, prior to the signing and sealing of this instrument, the plaintiff would have been bound by the contract nominated in his agreement and could not have gotten beyond it, and could have recovered no more than the price stipulated for. If he knew that that was in the contract, or if his attention was called to it and an attempt was made to read it, which he declined to hear, then it was in the contract, and he was bound by it and could not recover for that additional building. If it was put there, no matter whether it was for the purpose to deceive him or not, but if it was put there, and it did deceive him so that he didn't know that that provision was in the contract because of its position, and he signed the contract without his attention being called to it, then it is not part of this contract, and he would be entitled to recover for it.

" The defendants testify that they read it to him. Mr. Person and Mr. Riegel, who are both parties to this contract, say his attention was called to it, and when it was either read in whole or part, the plaintiff said : ' Yes, yes, I understand.' The two subscribing witnesses who were present at the time this contract was signed also testify that Mr. Lilly's attention was called to it, that it was read either in whole or in part, and he said : ' Yes, yes, I understand.' If that testimony is true, then he agreed to build that extension under this contract for the contract price, and cannot recover for it now. If it is not true, and his attention was never called to it, and he never saw it as part of the contract, that it was not part of the contract, and was not in-

cluded in the contract price, and he would have the right to recover whatever that extension was reasonably worth.] " [2]

" [The defendants claim that they are also entitled to a forfeiture of $10.00 a day for 15 days from the time of the completion of the contract to the time that they actually took possession. It is provided for in the contract : ' The said party of the first part further agrees that the work aforesaid shall be commenced and diligently prosecuted, and the materials promptly furnished, and the said building shall be wholly completed according to the terms of this contract and ready for use and occupancy on or before the fifteenth day of October next, and that for the store-room September fifteenth next, each and every day the same, the store-room, remains uncompleted after the said fifteenth day of September next, the said party of the first part shall and will forfeit the said sum of $10.00 per day for each of the first ten days after such date and for each and every ten days following said fifteenth day of September next the sum of $10.00 per day.'

" That provision in this contract is a binding provision. If it has been violated by the plaintiff without the consent of the defendants, or without any fault upon their part, then they are entitled to insist upon the forfeiture and have credit for it against the plaintiff's claim.

" The plaintiff claims that this forfeiture should not be enforced for the reason that after the contract was entered into there was a change made in the front of the building. The specifications provide that no change shall be made either in the quantity or the quality of the materials furnished : ' That, if the said party of the second part shall at any time alter or change the aforesaid plans or specifications, either in the quantity or quality of the work, the said party of the first part will execute the same without holding this contract as violated or void in any other respect.' The defendants claim that although the change in front was made by them, yet, nevertheless, that did not affect any other portion of the contract.

" It might be successfully contended by the plaintiff that this was no change in either the quantity or quality of the work, but was a change of the whole scheme and character of a certain portion of the work, namely, the front of the building, and, therefore, did not fall within this clause of the contract.

I do not consider that that is necessary—that it is necessary to determine that question for the purposes of this case. I say to you, as a matter of law, that if the finishing of this contract was delayed, necessarily delayed, by the change in the character of the structure by the defendants, then defendants are not entitled to recover any portion of this per diem forfeiture for any time beyond the necessary delay. That is to say, that if the defendants changed this front from the original contract, whatever delay was occasioned the plaintiff in the finishing of the building was the defendants' delay as well as the plaintiff's delay, and the defendants would have no right to recover for this forfeiture.] " [3]

Plaintiff's points, among others, were as follows :

" 12. If the evidence satisfied the jury that the contract, dated May 19, 1891, was signed on that date, that at and prior to the signing nothing was said to the plaintiff about an extension of the building 10 inches northwardly, and he signed the contract, believing that he was undertaking to build only on the front 30 feet, 4 inches, according to his bid, and the elevations and plans before him, that defendants first informed him of their proposed extension about May 29 or 30, after they had bought the 10 inches of Luckenbach on May 26, and then offered to pay defendants for extending the building 10 inches along Main street, then they should allow plaintiff such sum as the extension was reasonably worth. *Answer :* I affirm that by what I have already said in relation to the effect of this alteration or addition to the contract." [4]

" 15. If the value of such material was deducted from the amount stated as the gross contract price, and reckoned at the amount stated in the contractor's bid, it cannot be deducted again. *Answer :* That point I can only affirm as qualified by what I have already said in regard to it. If his attention was drawn to this alteration in the contract, he is bound by it; if it was not, and he signed it without knowing it, then he is not bound by it." [5]

Defendants' point, among others, was as follows :

" The jury must disregard all the evidence submitted by plaintiff concerning the value of the 10-inch extension of the width of the defendants' building, and reject that portion of his claim. *Answer :* That point I deny." [6]

Verdict and judgment for plaintiff for $1,235.60.   Defendants appealed.

*Errors assigned* among others were (1–6) above instructions, quoting them.

*W. S. Kirkpatrick, L. R. Meyers* with him, for appellants.— Parol evidence was improperly admitted to change the written contract: Lyman v. United Ins. Co., 17 Johns. (N. Y.) 373 ; Am. & Eng. Ency. Law, vol. 15, 629; North & West Branch Ry. Co. v. Swank, 105 Pa. 555 ; Phillips v. Meily, 106 Pa. 536 ; Cummins v. Hurlbutt, 92 Pa. 165 ; Sylvius v. Kosek, 117 Pa. 67 ; Murray v. N. Y., Lack. & West. R. R., 103 Pa. 37.

Every alteration on the face of a written instrument detracts from its credit and renders it suspicious; and this suspicion the party claiming under it is ordinarily held bound to remove. If this alteration is noted in the attestation clause as having been made before the execution of the instrument, it is sufficiently accounted for, and the instrument is relieved from that suspicion : 1 Greenleaf on Evidence, sec. 564; Greenfield's Est., 14 Pa. 496 ; Pennsylvania R. R. v. Shay, 82 Pa. 198.

According to the contract itself, the change being in the quality of the front as originally specified in the plans, and expressly subject to the provision that such changes were to be carried out without affecting the other provisions in any respect, the limit of time within which the store was to be ready for occupancy remained as before.

*W. E. Doster, W. C. Loos* with him, for appellee.—The $300 claim was for the jury : Spencer v. Colt, 89 Pa. 314 ; Thomas & Son v. Loose, 114 Pa. 35 ; Walker v. France, 112 Pa. 210 ; Ferguson v. Rafferty, 128 Pa. 356.

Whether interlineations were made before or after execution is for the jury : Haffelfinger v. Shutz, 16 S. & R. 44 ; Foster v. McGraw, 64 Pa. 464 ; Farmers' Mut. Fire Ins. Co. v. Blair, 82 Pa. 33.

The defendant claimed through the alteration, and it was beneficial to him only who made it.   The burden then was on him to show it was all right: Robinson v. Myers, 67 Pa. 9 ; McCauley v. Keller, 130 Pa. 69 ; Wilgus v. Whitehead, 89 Pa.

131; Emerson v. Slater, 22 Howard, 28; Monroe v. Perkin, 9 Pick. 298; Bartlett v. Kingan, 19 Pa. 341.

Defendants had no right to damages for delay: White v. Braddock, 159 Pa. 201; Pennypacker v. Jones, 106 Pa. 237; Seipel v. Internat. Life Ins. Co., 84 Pa. 47; Chitty on Contracts, 89; 2 Parsons on Contracts, 676; Broom's Leg. Maxims, 214; Huckestein v. Kelly & Jones Co., 152 Pa. 631; Bachler v. Cooper, 150 Pa. 533.

OPINION BY MR. JUSTICE FELL, May 20, 1895:

Our labor in reviewing the proceedings of a protracted trial involving many complicated questions of law and fact has been materially lessened by the clear and orderly manner in which the case has been presented by counsel.

The plaintiff contracted in writing with the defendants to construct a building for them for $17.550. One of the specifications provided that he should tear down an old building and use such materials in the construction of the new one as were suitable, " the net value of such materials to be reckoned at the amount stated in the contractor's bid, and the said amount to be deducted from the gross contract price." The plaintiff's bid for the new work and for the material of the old building was in writing, but had been lost or destroyed by the defendants, and there was no written evidence of the amount he had agreed to allow for the old material. The dispute upon this branch of the case was whether the agreed allowance for this material had been deducted from the amount of his bid in ascertaining the contract price or whether it should be deducted from the amount named in the agreement. The plaintiff was allowed to testify under objection that his bid was $17.880, and that he wrote below his bid that he allowed $300 for the old building; that he was then told by the defendants that if he would throw off $30.00 they would give him the contract; that he assented to this, and that the contract was afterwards written and the price named in it, $17,550, arrived at in that way. The issue of fact raised by this testimony and its denial by the defendants' witness was submitted to the jury to determine what the the actual agreement as to price was. We find no error in either the manner in which the issue was raised or the manner in which it was submitted.

The action was to recover on the basis of the price named in the contract. The only written evidence fixed that at $17,550. The plaintiff might have rested upon this agreement. As the bid for the work to be done and the old materials to be purchased had been lost the contract was the only written evidence in the case, and if any deduction was to be made parol evidence must of necessity be resorted to. If the defendants had done this either upon the ground that the contract offered was not the whole of the written agreement or that by mistake the amount of the bid for the old materials had not been deducted from the contract price it would have been competent for the plaintiff to have met the claim by oral evidence in rebuttal. As there was nothing in the agreement to bind him to take less than $17,550 his recovery on that basis could be defeated only by proof of matter outside the agreement. It was competent for him to anticipate such a defense and to explain any matter which suggested a doubt as to his claim.

The second ground of defense relates to the claim made by the plaintiff for additional compensation for constructing a building ten inches wider than the plans and specifications provided for. The agreement was signed at the middle of the last page, and witnessed by two witnesses. The attesting clause reads "Alterations on pages 1 and 2 were made before signing. Also additions on page 6." On the page following with nothing intervening to call attention to it is written, "The plans and elevations which form part of this agreement are ten inches less than the width of the building is intended to be. In all cases the details will be followed in preference to $\frac{1}{8}''$ and $\frac{1}{4}''$ scale drawing." The half of the page below the signatures was blank, and there was ample room to have written this addition there. The testimony was conflicting as to whether the addition had been made before the agreement was signed, and whether the plaintiff's attention had been called to it. The subscribing witnesses testified that it had been made before signing, and that it was read to the plaintiff, and they were corroborated by one of the defendants. The plaintiff denied all knowledge of it and of any intention on the part of the defendants to construct a wider building, until he had commenced work and was consulted by them as to the additional cost and agreed to the change, the cost being left for adjustment when the work

,was completed.   He was sustained by the corroborating proof
.that the purchase of the additional strip of ten inches of ground
was not made until seven days after the agreement was signed,
and that .then the architect's attention was first called to the
matter and the plans altered.   We are concerned with this con-
flicting testimony only as it gives rise to and affects the legal
question involved.   The jury was instructed that if the plain-
tiff did not know of the addition to the contract at the time of
·signing and was deceived because of the place in which it was
written, he was not bound by it.   The contract remained in the
·possession of the defendants from the date of its execution
until it was produced at the trial, and during that time was not
seen by the plaintiff.

Any alteration of a written instrument detracts from its
credit.   If the alteration is material and in the interest of the
person producing the writing it gives rise to a suspicion which
it is incumbent upon him to remove.   An alteration may ordi-
narily be sufficiently explained by the fact that it is noted in
the attestation as having been made before the execution, as
this virtually incorporates it in the text.   " But if any ground
of suspicion is apparent on the face of the instrument the law
presumes nothing, but leaves the question of time when it was
done, as well as that of the person by whom and the intention
with which the alteration was made, as matters of fact to be
ultimately found by the jury upon proof to be adduced by the
party offering the instrument in evidence :" Greenleaf on Evi-
dence, vol. 1, *564; Jordan v. Stewart, 23 Pa. 244.   The addi-
·tion in this case was after the signatures.   It was not written
on the same page with them, although there was ample room,
half of the page being blank.   It was written at the top of
the following page, where it would not ordinarily be observed.
·The plaintiff is presumed to have read all that preceded his
signature, but there is no presumption that he read what fol-
lowed it on another sheet.   The testimony on this branch of
the case raised an issue which was properly submitted to the
jury.

The contract provided that the builder should forfeit $10.00
for each day that the building remained unfinished after the
·time fixed by the agreement for its completion.   It also provided
that any change in the plans " either in quantity or quality of

the work" should be executed by the plaintiff "without holding the contract as violated or void in any other respect." During the progress of the work a change was made in the material for the front of the building from brick and granite to Indiana stone with carved panels and frieze. The difficulty in procuring a prompt delivery of the stone caused a delay in finishing the building, and the defendants claimed to recoup the stipulated forfeit and set off the loss of rents. By the agreement the defendants reserved the right at any time during the progress of the work to make any alterations in the plans and specifications, and it became the duty of the plaintiff to carry them into effect. The provision that the changed plans should be executed without holding the contract as violated or void in any other respect should be read in connection with this reserved right. The words "in any other respect" exclude the implication of any change in terms except such as would result from the alteration of the plans, but not such changes as would be the necessary consequence thereof. Alterations calling for more work and materials, or work and materials of a different class, might of necessity require more time for the completion of the building. They might be directed so near the end of the work as to make it impossible to complete the building within the time stipulated. In this case the building was in Bethlehem, and the material fixed for the front by the contract could be purchased in an open market and delivered ready for use in one day. The stone required by the alteration could be procured only at the quarries in Indiana, where an order had to await its turn, and after delivery it required weeks of skilled labor to fit it for use in the building. For such delay in the completion of the building as was the necessary consequence of the change of plans by the defendants the plaintiff was not answerable, and for it no forfeiture could be exacted.

The judgment is affirmed.