In the Estate of Andrew M. Moore, deceased. Appeal of the Fidelity Insurance Trust and Safe Deposit Company, Joseph F. Sinnott and Walton Pennewill, Executors of Andrew Moore, deceased.

*Contract—Specific performance—Decedents' estates.*

Decedent contracted to sell land under an agreement by which the purchaser was to raise a loan and apply the money from it to the construction of a building, and to the payment of liens existing upon the property. The time for the performance of the contract was twice extended, and the dece-

dent and the purchaser acted together in seeking to carry it out. After the expiration of the second extension the purchaser frequently advised with the decedent, acted in a manner under his direction, and was encouraged by him. When he at last succeeded in securing the money, and was ready to consummate the agreement, decedent was unable to attend to business, and shortly afterwards died. *Held*, that the orphans' court committed no error in decreeing specific performance of the contract by decedent's representative.

Argued March 28, 1899. Appeal, No. 77, Jan. T., 1899, by Fidelity Insurance Trust and Safe Deposit Company et al., from decree of O. C. Phila. Co., sustaining exceptions to master's report. Before Green, McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Exceptions to report of Charles Biddle, Esq., master. Before Penrose, J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree awarding specific performance.

*Richard C. Dale*, with him *H. H. Pigott* and *Simpson & Brown*, for appellants, cited Westerman v. Means, 12 Pa. 97; Bodine v. Glading, 21 Pa. 50; Story's Equity Jurisprudence, sec. 776.

*Ormond Rambo*, for appellee, cited Beach on Modern Eq. Juris. sec. 590; Remington v. Irwin, 14 Pa. 143; D'Arras v. Keyser, 26 Pa. 249; Mussleman's App., 65 Pa. 480; Sylvester v. Born, 132 Pa. 467; Day v. Hunt, 112 N. Y. 191; Hatton v. Johnson, 83 Pa. 219; Forsyth v. Oil Co., 53 Pa. 168; Tiernan v. Roland, 15 Pa. 429; Sylvester v. Born, 132 Pa. 467; Pomeroy on Contracts, sec. 304; Hatton v. Johnson, 83 Pa. 219; Hancock v. Melloy, 187 Pa. 371.

Opinion by Mr. Justice Fell, May 23, 1899:

The contract of the decedent for the sale of the Girard House property, the specific performance of which was decreed by the orphans' court, contains peculiar provisions which have an important bearing on the questions presented by this appeal. The property was subject to liens amounting to some $600,000, and

in order to make it productive as an investment it was necessary that a large sum should be expended in the construction of a new building. The contract provides that Mr. McDevitt, the purchaser, shall obtain a loan on first mortgage of $700,000, apply this money as far as necessary to the payment of liens, and pay the balance to Mr. Moore; that he shall obtain a loan on second mortgage of $500,000 and apply the money to the erection of a building to cost not less than $800,000, the money to be paid by the mortgagee as work on the building progresses, and the mortgagee to be secured by bond that the money will be so applied; and that he shall execute and deliver to Mr. Moore a third mortgage of $800,000 and pay $25,000 in cash as soon as he shall obtain the approval of the plans of the building by the party who agrees to make the loan.

This contract, if carried into effect, would have enabled Mr. Moore to dispose of an unmarketable property, and to have obtained a higher price for it, because of the provisions for its improvement. It imposed upon Mr. McDevitt an obligation to borrow of third parties $1,200,000 and to erect a building at a cost of $800,000. It was in effect a building agreement, differing from the usual building agreement by which the owner agrees to sell and to make advances only in the provision that the advances were to be obtained from third parties. It required the doing of many things not a part of a simple contract for the sale of land, and the doing of them to the satisfaction of third parties. The approval of the plans of building, and many matters of detail which could be disposed of only as they arose in their order, were necessarily left for future negotiations. Presumably the parties acted with this knowledge and knew, not only that time would be required, but that modifications and changes would have to be made in order to carry out the contract.

By writing, the time was twice extended, and on June 19, 1897, seven days before the end of the last extension, Mr. Moore wrote suggesting and agreeing to a modification of the contract whereby he would be required to lend Mr. McDevitt two $100,000 mortgages, to enable him to obtain enough money to complete the building. A month or more after the expiration of the time he advised Mr. McDevitt to break off his negotiation with a company which had agreed to loan him $1,000,000 and to apply

elsewhere for the money. Negotiations between the parties continued without interruption until December, 1897, when Mr. Moore became unfitted for business by reason of illness which resulted in his death in January, 1898. During the whole of this time there was no suggestion that the contract was ended; both parties seem to have treated it as a subsisting agreement, and to have endeavored by modification and adjustment to overcome the difficulties which arose because an indeterminate third party who was to furnish the money was to be satisfied with the security. Matters which had not been provided for in detail in the original agreement, because they were of such a nature that they could not then be settled, were taken up and considered. Plans and proposals for the building were submitted to Mr. Moore in July or August, and from the early part of the summer until December he had interviews with his conveyancer, Mr. Masson, two or three times each week in relation to the matter. During this time Mr. McDevitt went on with the undertaking, encouraged by Mr. Moore, and in a manner acting under his advice and direction, and incurred an expense exceeding $15,000. When he succeeded in securing the money necessary and was ready to consummate the agreement in December, 1897, Mr. Moore was unable to attend to business.

The argument that the testimony shows nothing more than a mere indulgence upon the part of Mr. Moore is not without force; but when in connection with the testimony the purpose and character of the agreement are considered we cannot say that there is error in the conclusion reached by the orphans' court that the limitation as to time had been waived and that in December, 1897, both parties considered the agreement as binding.

The decree is affirmed and the petitioner is allowed sixty days from the date of the filing of this opinion to perfect and carry out his agreement.