**In re NEW–COM CORPORATION, A Pennsylvania Corporation, Debtor/Plaintiff,**

**v.**

**ESTATE OF James A. GAFFNEY; Anthony S. Guido, Esq., Individual; Anthony S. Guido, P.C.; and Pittsburgh National Bank, Executor Of The Estate of James A. Gaffney, Defendants,**

**v.**

**FIRST STATE SAVINGS, A DIVISION OF ATLANTIC FINANCIAL FEDERAL, Defendant.**

Bankruptcy No. 85–1713.
Adv. Nos. 85–548, 86–195.

United States Bankruptcy Court,
W.D. Pennsylvania.

March 30, 1987.

Howard W. Bischoff, Pittsburgh, Pa., Michael Pugliese, Tionesta, Pa., for debtor.

Jay Silverblatt, Pittsburgh, Pa., for First State Sav.

David H. Patterson, Pittsburgh, Pa., for Guido.

Anthony S. Guido, Anthony S. Guido, P.C., DuBois, Pa., for Gaffney estate and Sandra Gaffney.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court are two actions, wherein the Debtor requests that this Court rescind a contract for the purchase of certain real property, and also requests damages, alleging that the Defendants caused Debtor harm. The contract action was commenced in the state court, and was removed to this Court following the filing of the Debtor's Chapter 11 bankruptcy. Defendants have responded by requesting that the contract action be remanded to the state court, and have moved for dismissal of the damage action, as having failed to state a claim upon which relief can be entered. A hearing was held, and thereafter the parties submitted supplemental briefs. Based upon these offers and this Court's research, we find that Debtor's Complaint for rescission must be denied and judgment entered for Defendants; and, Defendants' Motion to Dismiss the Damage action will be granted.

### FACTS

On September 11, 1968, James A. Gaffney individually purchased certain real property in Clearfield County, Pennsylvania. Eight (8) years later, on August 12, 1976, Mr. Gaffney, joined by his wife Sandra, executed a Mortgage in favor of First State Savings ("First State") in the amount of $172,500.00; said Mortgage was properly recorded with the Recorder of Deeds for Clearfield County.

In January of 1978, James Gaffney died, and in the ordinary course of events, Pittsburgh National Bank, Paul C. Gaffney and John J. Sharkey were appointed co-executors of the Gaffney estate.

On December 7, 1978, the above-mentioned executors sold said realty to the Debtor for $214,175.87; said deed was properly recorded with the Recorder of Deeds for Clearfield County. As the Mortgage to First State was of record on the date of the sale, and as said Mortgage was not satisfied at or by the sale, the purchase by the Debtor, by operation of law, was subject to said Mortgage. In addition, the deed from the executors of the Gaffney estate to the Debtor herein, contained the following language:

UNDER AND SUBJECT to the payment of the present balance due of $164,175.57 on a certain Mortgage and Note from James A. Gaffney and Sandra J. Gaffney to First State Savings Association, dated August 12, 1976, and recorded in Mortgage Book Volume 324, page 253.

Between September 7, 1978 and March of 1983, Debtor made the Mortgage payments. Thereafter, Debtor failed and/or refused to tender said Mortgage payments.

A forbearance period of four (4) months elapsed prior to the mortgagee's commencement of an Action in Mortgage Foreclosure, which named as defendants, the Gaffney estate, Sandra Gaffney, and Debtor, as owner in fact, pursuant to Pa.R.Civ. Pro. 1144(a)(3). The Gaffney estate and Mrs. Gaffney entered an appearance, and filed a document, having limited legal value, titled *Answer and New Matter*; said *Answer* averring the novel defense that the realty in question was sold to New-Com, Debtor herein, and that the Gaffneys were without information upon which to respond as to whether Debtor had honored its agreement to make the appropriate Mortgage payments. Proof thereof was demanded at trial. In essence, the *New Mat-*

*ter* was equally creative in averring that Debtor and its principals had agreed to assume and pay the Mortgage, and that the Plaintiffs herein, by accepting payments on said Mortgage from the Debtor and its principals, *impliedly* agreed to release the Gaffneys from liability on the bond and the Mortgage.

All parties agree that Plaintiff/Debtor executed no document releasing the Gaffneys from their duties pursuant to the bond and mortgage; and to the contrary, Debtor/Plaintiff denies any such action. Clearly, a Motion for Judgment on the Pleadings and/or a Motion for Summary Judgment would have determined this alleged defense as being without basis.

Debtor, a named Defendant, apparently ignored the proceeding and service of process, and never entered an appearance or filed a defense.

On March 18, 1985, a default judgment was entered against Debtor for the sum of $197,833.44; the Debtor, even to this date, has made no attempt to open or strike said judgment. Execution proceedings were commenced by First State to divest Debtor of any interest it owned in the subject property. However, the Sheriff's Sale, scheduled for August 2, 1983, was stayed by Debtor's filing of its Chapter 11 bankruptcy petition on August 1, 1985.

In the interim, on March 21, 1984, Debtor commenced a civil action against the Gaffney estate, Anthony S. Guido, Esquire, and Anthony S. Guido, P.C. (hereinafter both referred to as "Guido"), counsel for the estate, and Pittsburgh National Bank ("PNB"), the sole remaining executor of the Gaffney estate; wherein Debtor sought to rescind the sales agreement for the property in question, claiming that a cloud remained on said title, i.e., Mrs. Gaffney's "dower rights". Guido responded with Preliminary Objections in the form of a Demurrer on April 3, 1984.

On September 3, 1985, the learned state court judge entered an Opinion and Order sustaining Guido's objections and dismissing Debtor's Complaint as being without basis or merit. However, as Debtor had filed its bankruptcy petition on August 1, 1985, said Opinion and Order were inadvertently entered in violation of the automatic stay; they are therefore null and void.

These adversaries were commenced on October 25, 1985, and March 24, 1986; the first involving the aforementioned recission issue and the second constituting a request for compensatory and punitive damages against Defendants for allegedly causing Debtor substantial harm and expenses by forcing it to file bankruptcy. Defendants responded to the second Complaint by filing a motion to dismiss for failure to state a claim upon which relief can be granted.

## ANALYSIS

**I.** Rescission of a contract constitutes an annullment of said contract, and contemplates the restoration of the parties to their prior positions. *Gilmore v. Northeast Dodge Company, Inc.,* 278 Pa.Super. 209, 420 A.2d 504 (1980); *Fichera v. Gording,* 424 Pa. 404, 227 A.2d 642 (1967). Initially we note that the property's sale price was $214,175.87 in 1978; said property is now valued at approximately $50,000.00. This Court is hard pressed to discern how the parties could at this late date be returned to their prior positions. If the parties cannot be so restored, rescission is generally denied. *Muehlhof v. Boltz,* 215 Pa. 124, 64 A. 427 (1906); *Sullivan v. Allegheny Ford Truck Sales, Inc.,* 283 Pa.Super. 351, 423 A.2d 1292 (1980); *Cold Metal Processing Company v. United Engineering & Foundry Company,* 107 F.2d 27, (3rd Cir.1939); *New York Life Insurance Company v. Sisson,* 19 F.2d 410 (W.D.Pa. 1926); *Sachs v. Continental Oil,* 454 F.Supp. 614 (E.D.Pa.1978).

█ Rescission is only available to that party who has not caused a breach or default to occur. *Lilly v. Person,* 168 Pa. 219, 32 A. 23 (1895). As Debtor ceased making mortgage payments four (4) years ago, it is clear that Debtor is not entitled to rescind.

█ Furthermore, the only grounds upon which equity will permit rescission of an executed contract are fraud, mistake,

failure of consideration, and quia timet. *Windle v. Crescent Pipe Line Company*, 186 Pa. 224, 40 A. 310 (1898); *Hays v. Hays*, 179 Pa. 277, 36 A. 311 (1897); *Delamater's Estate*, 1 Whart. 362 (1836). None of the parties have alleged fraud; additionally, as all of these parties, as well as Debtor's present counsel, were present at the execution of the sale documents, and were able to avail themselves of the facts surrounding same, no one can now raise mistake as a defense. If a literate party chooses not to carefully read a contract before executing same, he is guilty of negligence, and cannot plead equitable protections. *Garrett Motors v. Baker*, 20 Beaver 227 (1959). If the brush paints the closing officer as negligent, then certainly it would reflect the same malpractice upon Debtor's counsel.

■ Debtor may be arguing that there was a misrepresentation by Guido as to the marketability of title; specifically, that Debtor was not advised of Mrs. Gaffney's interest, nor that Mrs. Gaffney's signature was necessary to make the deed a valid document. However, as previously stated, both parties had access to all of the information surrounding this realty, both parties were aware that Mrs. Gaffney did not execute the deed, and both parties were represented by counsel. Debtor's counsel was aware of the Mortgage and the parties thereto. This scenario does not provide a basis for equitable relief. *See, Rockafellow v. Baker*, 41 Pa. 319 (1861).

■ It is well settled that an executed agreement should not be rescinded on the basis of inadequate consideration, when no fraud or mistake has occurred. *Black v. T.M. Landis, Inc.*, 280 Pa.Super. 621, 421 A.2d 1105 (1980); *Bittenbender v. Bittenbender*, 185 Pa. 135, 39 A. 838 (1898). Otherwise, parties would seek to rescind any contract which might become burdensome. *See, Pennsylvania Railroad Company v. Pennsylvania/Ohio Electric Company*, 296 Pa. 40, 145 A. 686 (1898). Debtor cannot simply walk away from a deal four (4) years after consummating same, simply because the deal was not the financial success anticipated.

■ The principle of "quia timet" is a doctrine whereby a party seeks equitable relief, based upon concern over future probable injury to certain rights or interests. If in fact Debtor seeks this relief, we must assume it is based upon a concern that Mrs. Gaffney will pursue her dower rights at some future date. This request must fail because Mrs. Gaffney's dower right expired over eight (8) years ago; *see,* 20 Pa.C.S.A. § 2210 (wherein a surviving spouse has six (6) months to elect against the decedent's will. As Mr. Gaffney died in January of 1978, Mrs. Gaffney's election expired in July of 1978, at least four (4) months prior to the sale of the property in question). Further, counsel stated, and all parties stipulated, that Mrs. Gaffney had previously agreed she would not pursue these rights.

■ Finally, it is clear that a party's neglect in promptly seeking a rescission can constitute a waiver of such a claim. *Moore's Estate*, 191 Pa. 600, 43 A. 474 (1899). Once a party finds that rescission is appropriate, he must act promptly to notify the other party. *See, Fichera v. Gording, supra; Galati v. Potamkin Chevrolet Company*, 198 Pa.Super. 533, 181 A.2d 900 (1962). While there is no specific length of time deemed reasonable, it would appear that once the parties positions have changed significantly, such a right would be lost. Equity will not assist a party who has slept on his rights. *Rarry v. Shimek*, 360 Pa. 315, 62 A.2d 46 (1948); *Kinter v. Commonwealth Trust Company*, 274 Pa. 436, 118 A. 392 (1922); *Sowers Administrator v. Weaver*, 84 Pa. 262 (1877). Accordingly, rescission has been barred by laches when the Plaintiff delayed bringing the action for six (6) years, *Kinter, supra; Davis v. Stuard*, 99 Pa. 295 (1882); and similarly was barred by a five (5) year delay. *Fichera, supra.*

In the case at bar, Debtor entered into said contract for sale on December 7, 1978. The Debtor made the requisite mortgage payments for over four (4) years. It was not until October 25, 1985, almost seven (7) years after contracting, that Debtor commenced these adversary proceedings. This

Court believes that it is the *Debtor* who has caused a significant delay, which has inured to the *Defendants'* detriment.

II. A motion to dismiss for failure to state a claim upon which relief can be granted is not generally favored; it must only be granted if it appears certain that the plaintiff is entitled to relief under any statement of facts which could be proven. *Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943 (3rd Cir. 1984).

Debtor appears to be claiming that the pursuit of the Action in Mortgage Foreclosure, subsequent execution and Sheriff's Sale, forced the Debtor to file bankruptcy and caused the Debtor harm, including legal expenses.

Debtor was properly named as Defendant in the Mortgage Foreclosure action. Pa.R.Civ.Pro. 1144(a)(3). As it entered no appearance or defense; a default judgment precedent to divesting Debtor's ownership was properly entered. As Debtor made no attempt to open or strike said judgment, it is barred from relitigating said action in this forum.

Upon receipt of said default judgment, First State sought a Writ of Execution in order to complete the divestiture and sell said property. Pa.R.Civ.Pro. 3180 and 3181. Said Writ is an action in rem and affects the land only, not the Debtor.

First State followed through with said execution by scheduling the property for Sheriff's Sale. Had the Sheriff's Sale proceeded to completion, and had the selling price not satisfied the Mortgage, Debtor could not have been subject to a deficiency action, as no in personam judgment had been sought or granted, and as Debtor did not assume the Mortgage debt.

The filing of this bankruptcy case offered Debtor no further protection. As the corporation took the property *subject to* the Mortgage debt, it could not be held liable for any deficiency, whether or not the bankruptcy had been filed.

Given the foregoing analysis, we find that Plaintiff has not stated a claim upon which relief can be granted, and in fact, may have provided Defendants with their own cause of action.

An appropriate Order will be issued.