Sarah J. Inlow, Appellant, *v.* Francis M. Christy and Mary A. J. Christy, Executors of the Last Will and Testament of John T. Christy, deceased.

*Trusts and trustees—Fraud—Laches—Act of April 22, 1856—Equity.*

A brother advanced the purchase money for a tract of land and executed a declaration of trust by which he declared that he held the land for himself and his brothers and sisters, their respective shares to be conveyed to them upon payment of their portions of the purchase money. One of his sisters refused on demand to pay her share of the original purchase money, but executed to him a quitclaim deed for her share for $500. Within two years after the execution of the quitclaim deed she discovered, as she alleged, that the land was worth ten times the amount which she received for it, and that she had been defrauded by the fraudulent representations of her brother. Ten years afterwards, and six months after the death of her brother, the trustee, she filed a bill to have her conveyance set aside. During these ten years she knew that the land was being developed for coal, but she never asserted her rights. *Held,* (1) that the complainant's laches was a distinct affirmation of her conveyance; (2) that there was nothing in the trust relation created by the declaration of trust which imposed upon the brother any greater burden in proving his contract, or which relieved his sister of any burden in rescinding it, than if it had been made between strangers; (3) that the complainant was barred by her laches and by the Act of April 22, 1856, P. L. 532.

Argued April 19, 1898. Appeal, No. 94, Jan. T., 1898, by plaintiff, from decree of C. P. Blair Co., Dec. T., 1895, No. 247, dismissing bill in equity. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to cancel a deed.

The facts appear by the opinion of the Supreme Court.

The court by LYONS, P. J., of the 41st judicial district, specially presiding, entered a decree dismissing the bill.

*Error assigned* was decree dismissing the bill.

*F. B. Bracken,* with him *E. H. Flick* and *Edward T. McNeelis,* for appellant.—An implied trust must arise, if at all, from the date of the transaction, or the passing of the deed in which

it originated: Gould v. Lynde, 114 Mass. 366; Payne v. Patterson, 77 Pa. 124; Cook v. Fountain, 3 Swanst. 591.

Courts have never resorted to the fiction of an implied trust to afford relief to a cestui que trust where the trustee endeavored to shield himself from a demand to account by setting up a release to himself of the beneficial interest from his cestui que trust: Michoud v. Girod, 4 How. 503; Bixler v. Kunkle, 17 S. & R. 298; Smith v. Townshend, 27 Md. 388.

A release from a cestui que trust to his trustee is either absolutely void as the basis of any title whatever, or, if sustained, is an absolute relinquishment of all interest by the cestui que trust: Newbold's App., 80 Pa. 317; Way v. Hooton, 156 Pa. 8.

An examination of all the cases decided by this Court in which the sixth section of the Act of April 22, 1856, P. L. 532, was held to apply, will show that they were all cases of resulting or constructive trusts purely: Christy v. Sill, 95 Pa. 380; Silliman v. Haas, 151 Pa. 52; Clark v. Trindle, 52 Pa. 492; McNinch v. Trego, 73 Pa. 52; Roy v. Townsend, 78 Pa. 329; Rider v. Maul, 70 Pa. 15; Douglass v. Lucas, 63 Pa. 9.

On the other hand the instances are numerous where this Court, disregarding the five years' period fixed by the act, has afforded relief by setting aside written instruments attacked on various equitable grounds: Darlington's App., 86 Pa. 512; Worrall's App., 110 Pa. 349; Meurer's App., 119 Pa. 115; Miskey's App., 107 Pa. 611; Bugbee's App., 110 Pa. 331; Eberts v. Eberts, 55 Pa. 110; Tanney v. Tanney, 159 Pa. 277.

Even had the plaintiff slept on her rights since the execution of the fraudulent release, she would still not have been barred from relief by acquiescence, she having, under the authorities, twenty-one years from the time her trustee set up his adverse claim in which to begin proceedings: Pipher v. Lodge, 4 S. & R. 309; Elmendorf v. Taylor, 10 Wheat. 171; Kane v. Bloodgood, 7 Johns. Chanc. 90; Philippi v. Philippe, 115 U. S. 151; Baker v. Whiting, 3 Sumner, 486; Hiester v. Madeira, 3 W. & S. 384; Exton v. Greaves, 1 Vern. 138.

The burden of establishing the fairness of the transaction is in all cases on the trustee: Graves v. Waterman, 63 N. Y. 657; Beckett v. Tyler, 3 McArthur, 319; Greenfield's Est., 14 Pa. 489; Miggett's App., 109 Pa. 520; Wistar's App., 54 Pa.

63 ; Parshall's App., 65 Pa. 224 ; Coles v. Trecothick, 9 Vesey, 247 ; Pomeroy on Equity Juris. sec. 958 ; Lewin on Trusts, 926.

*A. A. Stevens*, of *Stevens, Owens & Pascoe*, and *D. J. Neff*, for appellees.—The quitclaim deed conveyed a good fee simple title to the land therein described : Schlegel v. Herbein, 174 Pa. 504 ; Wilson v. Albert, 89 Mo. 537 ; Christy v. Christy, 176 Pa. 427 ; Brink v. Michael, 31 Pa. 165 ; Fulton v. Moore, 25 Pa. 468.

The deed was only voidable : Pearsoll v. Chapin, 44 Pa. 9 ; Negley v. Lindsay, 67 Pa. 217 ; Christy v. Sill, 95 Pa. 380 ; Lyon v. Phillips, 106 Pa. 57.

If complainant intended to repudiate the deed and rescind the contract, it was her duty to do so within a reasonable time, and to communicate her election to do so to John T. Christy within the same : Howard v. Turner, 155 Pa. 349 ; Logan v. Gardner, 136 Pa. 588 ; Bispham's Prin. of Eq. sec. 259 ; Hilliard v. Wood Carving Co., 173 Pa. 1 ; Leaming v. Wise, 73 Pa. 173 ; Gibson v. R. R., 164 Pa. 142 ; Hollingsworth v. Fry, 4 Dallas, 345.

Appellant is barred by the act of April 22, 1856 : Bispham's Prin. Eq. sec. 20 ; Tanney v. Tanney, 159 Pa. 284 ; Hollinshead's App., 103 Pa. 158 ; McKean & Elk. L. & Imp. Co. v. Clay, 149 Pa. 277 ; Silliman v. Haas, 151 Pa. 52 ; Way v. Hooton, 156 Pa. 8.

OPINION BY MR. JUSTICE DEAN, July 21, 1898 :

The nature of the title of defendants' testator, Dr. John T. Christy, to the Gallitzin land of his father, Francis X. Christy, has been definitely settled by the final judgments of this Court in Christy v. Christy, 162 Pa. 485, and Same v. Same, 176 Pa. 427.    He held the legal title, accompanied by an express declaration of trust in favor of his brothers and sisters as to their respective shares.    To his own share he had both the legal and equitable title ; as to the other shares, the equitable was in the brothers and sisters, with the right to demand a conveyance from the brother as soon as they did equity, that is, paid to him their respective shares of the purchase money.    This was the situation of plaintiff and her trustee up until September 26, 1883, when for a consideration of $500 she remised, released

and forever quitclaimed unto the brother, all her estate, right, title, interest, property, claim and demand whatsoever in the property, which he held as her trustee. We do not deem it necessary to discuss the technical distinctions between forms of conveyances of land. The only material inquiry here is, what was the intention of the parties to the contract, and does the instrument adopted by them express that intention with sufficient clearness to enable a court to enforce it?

The evidence is abundant and uncontradicted, that the grantee sought to buy the interest, and that the grantor wanted to sell it. From the paper, on its face, the intention, by unmistakable and comprehensive terms, was accomplished. The deed, after its delivery, made John T. Christy the absolute owner of his sister's land; he was no longer her trustee under the express trust; she was no longer a beneficiary entitled to a conveyance from him of the legal title, on paying her proportion of the purchase money; the legal and equitable title were united in the purchaser.

Two years after the date of the deed, she avers she discovered that she had been defrauded by her brother, in that he had induced her to execute it by false representations as to the value of her interest; that instead of being worth but $500, the consideration paid, it was really worth ten times that sum. As to the question, whether the deed was procured by fraud, found as a fact in favor of plaintiff by the court below, and which has been earnestly argued here by counsel on both sides, we do not pass upon it, because it is not necessary to a decision of the cause.

In the consideration of the questions on which the judgment depends, we assume, that the deed was obtained by fraud; further, we accept as facts the averments of this bill, that she discovered the fraud within two years of the date of the deed, and that for more than ten years thereafter she made no attempt to assert title, or to have the fraud judicially ascertained and declared. In the mean time, she knew the grantee was improving the land and developing the coal. She had in her possession the purchase money, $500; besides, before executing the deed, she refused to pay her share of the original purchase money paid by John T. Christy to the executor of his father. As to this last statement, the learned judge of the

court below, inadvertently, we think, fell into error, in finding no demand had been made upon his sister for her share. His letter to her of April 10, 1883, plainly declares that a demand had been made, for he says, " You wrote me that you could not nor would not pay me a dollar." This is not only an assertion to her of a previous demand and refusal, but in itself is a reiteration of such demand. The court remarks, that defendants do not produce her reply to this letter; therefore, his letter to her is not evidence of the fact of demand and refusal. The conclusion, clearly, is unwarranted; it does not follow that any reply was made; it must follow, that if she responded favorably to the demand she could show evidence of payment, which it is conceded by her was not made, but that she received the letter is conclusively shown by the fact that she voluntarily produced it at the trial, a fact not called to mind by the court when it dismissed the letter as insufficient proof of the demand. So then, we have the three facts established: first, plaintiff refused on demand to pay her share of the original purchase money. Second, within two years after her deed to her brother she discovered the alleged fraud. Third, although she knew of the improvements being made on the property, and the development of coal under it, for ten years she did not move to assert her right. Therefore, treating this as a voidable contract, which it clearly was, that is, void as to the wrongdoer, but not void as to the wronged party, unless she elected so to treat it, what is her standing in a court of equity as complainant in this bill? In Leaming v. Wise, 73 Pa. 173, where the fraud consisted in a false representation as to the value of the stock, and the stock was tendered back within four months after the discovery of the fraud, it was held: " If they intended to rescind the contract, it was their duty to act promptly and to return or tender the stocks at the earliest convenient moment after discovering the fraud. If they unduly delayed to return them and demand back the price they affirmed the validity of the contract. What is reasonable time or undue delay when the facts are not disputed is, as is well settled, a question of law to be determined by the court. . . . Here, the delay was for four months, and no evidence was given to explain or excuse it. Under the circumstances, we have no hesitation in saying that it was unreasonable." Other authorities in our state to the same effect are

numerous, among them: Pearsoll v. Chapin, 44 Pa. 9; Howard v. Turner, 155 Pa. 349; Hilliard v. Wood Carving Co., 173 Pa. 1. It is clear to us that the long delay of appellant, twelve years from the date of the deed, ten years from her admitted discovery of the fraud, and six months after the death of her brother, to announce her election by legal proceedings to rescind, is too late. Such laches was a distinct affirmation of her contract, expecially after the property, by a large expenditure of money and changed circumstances, had greatly appreciated in price.

Appellant's counsel argues that this is a case of a trustee dealing with his cestui que trust; and that by all the authorities, while the release or quitclaim deed is good as a receipt for the amount paid, it is absolutely valueless as a conveyance, until the trustee shows affirmatively the actual fairness of the transaction. The argument does not take notice of the distinction between a cestui que trust under an active trust, where the trustee has active duties to perform, and a mere dry trust, which last is the case before us. The whole duty of the trustee was to advance the purchase money, take and hold the legal title for his sister; her duty was to pay him her share of the purchase money, and it then became his duty to convey to her. This was the whole scope of the trust. "The position of such a trustee gives him no vantage ground, either of superior information or undue influence over the cestui que trust, and the parties, therefore, deal as strangers, and are subject to the ordinary rule of buyer and seller:" Bispham's Principles of Equity, sec. 237; 1 Lewin on Trusts, page 484; Perry on Trusts, sec. 521. There was nothing in the relation of the parties or the terms of the trust which imposed upon the trustee any greater burden in proving his contract, or which relieved her of any burden in rescinding it, than if it had been made between strangers. The quitclaim deed must be taken, prima facie, for what it purports to be, an absolute extinguishment of the grantor's title in the land. She was bound to move for its rescission within a reasonable time after she discovered she was wronged, and this she did not do. The court below does not sustain its decree on the ground of implied ratification, which, as we think we have shown, it might well have done, but it dismisses plaintiff's bill, because she attempts to enforce an implied trust after the ex-

piration of five years, and therefore her action is barred by the 6th section of the act of April 22, 1856. The able counsel for appellant makes a very plausible argument that the act referred to only bars the successful assertion of implied or resulting trusts; that the trust assumed by John T. Christy by his writing November 2, 1878, was an express trust, which was not within the terms of the statute; therefore, if the quitclaim deed be void by reason of fraud, her right is enforceable under the express trust, which is not within the statute. The argument, though plausible, when carefully scrutinized, is not convincing. The plaintiff was the equitable owner of an interest in land of which her brother held the legal title; this interest, it has been decided more than once, is, in this state, the subject of contract, conveyance and seizure on execution, the same as the legal title; she did convey it by a deed absolute on its face to her brother. This extinguished her equitable title; the trust relation by the deed was at an end. She demanded back, not the legal title to her interest, for that was governed by the terms of the express trust, but the equitable title, of which she had been defrauded, and which by her deed had vested in her brother. If her case be made out, it is only by declaring the brother a trustee ex maleficio of what she had conveyed to him, and which he did not before own. Equity would not, alone, declare the deed void; but would imply a trust in the brother of her equitable title, and would order a reconveyance. In all cases of fraud, where the transaction is mala fide, there is a resulting trust by operation of law; but if the transaction be a mere violation of a parol agreement, equity will not decree the purchaser a trustee: Robertson v. Robertson, 9 W. 36; Haines v. O'Conner, 10 W. 313. The principle of these cases has not been departed from.

The decree of trusteeship of Christy, because of the fraud upon his sister in procuring the deed, would not touch the trust under the express agreement. The last would rest on the writing, the other on an implication warranted by facts proved by parol. By her deed, the express trusteeship was at an end, and this by a writing as formal as the one which created it; it could not be revived until the establishment of an implied trust, resulting from the fraud in procuring the last writing. Until this was done equity could not restore to her that which she had parted with, her estate in the land; as the title and posses-

sion were in the wrongdoer, equity would declare him a trustee and order restitution by directing a reconveyance.  In no other way could it reach the land of a man held by a title absolute on its face, and which explicitly terminates his express trust.  On a decree, however, for reconveyance of that of which she had been wronged, ipso facto, the old express trust revived.  But in the proceeding to declare such an implied trust, equity comes face to face with the statute of limitations, and is powerless.

We think the court below was right in holding that plaintiff's bill was barred by the act of 1856.

The decree is affirmed at costs of appellant.