# Dunn, Appellant, *v.* Columbia Nat. Bank.

204        53
s207      549
204        53
f 34 SC ¹203

204     53
41SC¹652

*Promissory note—Fraud—Voidable transaction—Laches—Indorsement.*

Where the indorsement of a promissory note is voidable either by reason of any actual fraud, or any fraud existing by construction of law, or any mistake of facts, the party having the right to avoid the transaction must assert his rights promptly without any unnecessary delay and before the other party has in any manner changed his position.

Where an indorser of a promissory note might have avoided his indorsement because of facts not communicated to him by the indorsee at the time of the indorsement, he cannot avoid the transaction three and one half years afterwards, during which time he has renewed the note from time to time, waived protest, given a mortgage upon his own property and that of his wife, and has sought and secured an extension of time for two years, and has done all this with full knowledge of all the facts relating to the fraud in procuring the original indorsement.

Argued Nov. 5, 1901.    Appeal, No. 135, Oct. T., 1901, by plaintiff, from decree of C. P. No. 2, Allegheny Co., Oct T., 1900, No. 20½, on bill in equity in case of William T. Dunn v. Columbia National Bank.    Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat, and Potter, JJ. Affirmed.

Bill in equity for cancelation of indorsements on promissory notes, and for the cancelation of a mortgage.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* amongst others was decree dismissing the bill.

*S. B. Schoyer,* with him *S. Schoyer, Jr.,* for appellant.—Plaintiff's renewals of the original notes, waivers of protest, etc., could not constitute a ratification of the original fraudulent contract unless the same were made with full knowledge on his part not only of the facts, but of his legal right to resist payment and set aside the original transaction: Pearsoll v. Chapin, 44 Pa. 9; Cherry v. Newsom, 3 Yerger, 369; Coward v. Hughes, 1 Kay & Johnson, 443; Cumberland Coal & Iron Co. v. Sherman, 20 Md. 117.

The mistake of the plaintiff, being a mistake of fact arising

from a mistake of law, not being the result of deliberation or knowledge on his part that any other course was possible, or of choice or intention, nor of ignorance of the general law, but simply an ignorance of his existing and antecedent legal liability, equity will not refuse to relieve him in favor of a party seeking to profit by his own fraud : Wilson v. Ott, 173 Pa. 253 ; Cummings's App., 23 Pa. 510 ; Gross v. Leber, 47 Pa. 520.

Even if the plaintiff had had knowledge of the facts of his legal right, neither his delay in rescinding the contract nor his renewal of the original notes would have the effect of a confirmation unless the bank had been misled into relinquishing some advantage or into the assumption of some further liability thereby: Kirkpatrick v. Muirhead, 16 Pa. 117 ; Beland v. Anheuser-Busch Brewing Assn., 157 Mo. 393 (58 S. W. Repr. 1) ; Saxlehner v. Eisner, Mendelson & Co., 179 U. S. 19 (21 Sup. Ct. Repr. 7) ; Pearsoll v. Chapin, 44 Pa. 9.

The extension of time given by the bank to plaintiff when the original notes first matured, and the death of W. J. Dunn did not constitute any such change of status on the part of the bank as would estop the plaintiff : Leaming v. Wise, 73 Pa. 173.

Where a criminal proceeding for forgery is dismissed and the forged instrument returned to the forger simultaneously with the substitution by the latter of valid securities for the forged ones, such substitution having been made at the demand of the prosecutor and pursuant to an agreement with the forger, such facts are not only conclusive evidence that the discontinuance was in pursuance of an agreement to that effect but that the transaction constituted an actual compounding of a felony, independent of any agreement : Swope v. Jefferson Fire Ins. Co., 93 Pa. 251 ; Nat. Bank of Oxford v. Kirk, 90 Pa. 49 ; Riddle v. Hall, 99 Pa. 116 ; Williams v. Bayley, L. R. 1 H. of L. 200.

*A. Leo Weil,* with him *Charles M. Thorp,* for appellee, cited : Harris v. Tyson, 24 Pa. 347 ; Allen's App., 99 Pa. 196; Rose v. Barclay, 191 Pa. 594 ; Ford v. Cratty, 52 Ill. 313 ; Kissock v. House, 23 Hun (N. Y.), 35 ; Hilliard v. Wood Carving Co., 173 Pa. 1 ; Inlow v. Christy, 187 Pa. 186 ; Com. v. Moltz, 10 Pa. 527 ; Waters's App., 35 Pa. 523 ; Upton v. Tribilcock, 91

U. S. 45; Rankin v. Mortimere, 7 Watts, 372; McAninch v.
Laughlin, 13 Pa. 371; Peters v. Florence, 38 Pa. 194; Gross
v. Leber, 47 Pa. 520; Allen v. Galloway, 30 Fed. Repr. 466;
Hunt v. Rousmaniere, 1 Pet. 1; Bank of U. S. v. Daniel, 12
Pet. 32; Milwaukee, etc., Railroad Company v. Soutter, 13
Wall. 517; Lamborn v. County Comrs., 97 U. S. 181; Snell
v. Atlantic Fire, etc., Insurance Co., 98 U. S. 85; United States
v. Ames, 99 U. S. 35.

OPINION BY MR. CHIEF JUSTICE McCOLLUM, Oct. 13, 1902:
On January 20, 1897, William J. Dunn was indebted to the
Columbia National Bank in the sum of $38,500. In the evening
of the same day, William J. Dunn and W. H. Brunt, assistant
cashier of the bank, went to the residence of plaintiff, William
T. Dunn, who was the uncle of William J. Dunn. The resi-
dence referred to was about seven miles from the city and the
parties above named arrived there about nine o'clock. On
entering the house, William J. Dunn and W. H. Brunt were
met by plaintiff and taken into the parlor. William J. Dunn
then laid upon the table the two notes of $10,000 each which
had been drawn up in the bank and signed by him, and offered
them to plaintiff asking his indorsements, stating as he did so,
" There are the two notes concerning which I had the conver-
sation with you over the telephone." Plaintiff then said:
" Why do you want so large amounts as these?" or words to
that effect, but without further consideration of the subject,
endorsed the two notes of $10,000 each and delivered them to
his nephew. William T. Dunn finally learned of the full ex-
tent of the wrongdoings of his nephew a few days after the
signing of the notes, probably within a week.

Very soon after the delivery by plaintiff of the indorsed
notes, it was discovered that certain securities held as collat-
eral for loans to William J. Dunn were worthless because of
forgery. These securities purported to be certificates signed
by the controller of the city of Pittsburg for some of them,
and by the controller of the city of Allegheny for the remain-
der, of amounts of money due to William J. Dunn on con-
tracts held by him for each of said cities, for the construction
of public work such as sewers and paving. The bank was not
advised on January 20, that all the Pittsburg certificates were

forgeries, but on the next morning and before a settlement with the forger was effected, the bank was fully advised by the controller that all were forgeries.

The controller of the city of Pittsburg some time during the day of the 21st, and before the certificates had been passed by the bank to William J. Dunn, called at the bank and examined the signatures to the certificates, taking their numbers and afterwards caused an information for forgery to be made against William J. Dunn, upon which he was tried and pleaded nolo contendere and received a sentence which he served.

The most serious question which confronts the plaintiff is the repeated renewal of his indorsements of the notes, his waiver of protest and his obtaining an extension of time upon the mortgage of himself and wife. The rule of law appears to be well settled that where a transaction is voidable either by reason of any actual fraud, or any fraud existing by construction of law, or any mistake of facts, the party having the right to avoid the transaction must assert his rights promptly without any unnecessary delay and before the other party has in any manner changed his position. The rule is thus stated in the case of Grymes v. Sanders, 93 U. S. 55: " Where a party desires to rescind upon the ground of mistake or fraud he must upon discovery of the facts, at once announce his purpose and adhere to it. If he be silent and continue to treat the property as his own, he will be held to have waived the objection and will be conclusively bound by the contract as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which before existed." The decisions in our state are to the same effect. In Schenck's Appeal, 94 Pa. 37, Mr. Justice GORDON says: " Nevertheless, the effect is the same, for although the appellant might have been induced by representations of Martin Willars, agent, to sign the one thousand dollar note, yet, if after he had full time to inform himself of the character of those representations he, in consideration of an extension of the time of payment, settled with and executed new notes to Miller, he would thereby most certainly be excluded and estopped from setting up the fraud of the agent in the original transaction."

In Howard v. Turner, 155 Pa. 349, Mr Chief Justice STER-

RETT says, after citing several cases: "In the last case it is said if defendants were guilty of the alleged fraud, the plaintiffs, on discovering it, had an undoubted right to rescind the contract, and upon a tender of the stocks to demand back the price paid for them; but it was their duty to do so within a reasonable time. Omission to repudiate within a reasonable time is evidence, and may be conclusive evidence of an election to affirm the contract." See to the same effect, Watts's Appeal, 78 Pa. 370; Shisler v. Vandike, 92 Pa. 447; Leaming v. Wise, 73 Pa. 173; Hilliard v. Wood Carving Company, 173 Pa. 1; Inlow v. Christy, 187 Pa. 186.

In the case before us the delay continued from January 20, 1897, down to the filing of this bill, September 18, 1900, about three years and a half, and during this time the notes have been renewed from time to time, protest has been waived, mortgage given upon the property of the plaintiff, and an extension of time for two years has been given, and the maker of the notes has died. It seems quite clear that while the plaintiff, if he had acted promptly, might have set aside his indorsements on the notes for the reason that he was entitled to all information that the bank had, he may not do it after the lapse of so long a period, in view of his repeated acts of affirmance and the new contracts which he has entered into on the same subject-matter, with full knowledge of all the facts during that time.

We accordingly conclude that the plaintiff by reason of his acts of affirmance of the contracts, his waiver of protest, the indorsement of renewal notes, the giving of the mortgage upon his own property and that of his wife, and securing an extension of time of some two years, had lost his right to rescind his contract of indorsement, and is taken to have affirmed the same with full knowledge of all the facts upon which he now relies, and, therefore, the said contracts of indorsement and the mortgages given by him and his wife are binding upon him.

Judgment affirmed.