## Christy, Receiver of Pittsburgh Savings Bank, *versus* Sill et al.

1. The 6th section of the Act of April 22d 1856 is not, strictly speaking, an act of limitation but rather of repose. It is a highly beneficial statute and ought to be liberally construed.

2. Trusts arising from actual fraud are within the act.

3. Whenever a person has obtained the property of another by fraud he is a trustee *ex maleficio* for the person so defrauded. He is not a trustee for the title, for that he never acquired, but of the thing which he has in his manual possession.

4. A confidential relation is not necessary to establish a constructive trust. Such trusts frequently grow out of confidential relations, but they are not essential to a trust *ex maleficio*.

5. Per PAXSON, J.—There must be some point of time when a purchaser of real estate at a judicial sale shall not have his title cut up by the roots by mere parol evidence of what took place at such sale ; or by a secret trust, disentombed after the lapse of years, and set up by the uncertain recollection of witnesses as to remote transactions. The Act of 1856 was evidently intended to prevent titles being disturbed in this manner.

October 8th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county :* Of October and November Term 1880, No. 200.

Ejectment by the heirs of William Sill against the Pittsburgh Savings Bank and others.

William Sill, the ancestor of plaintiffs, was the owner of the property in dispute prior to April 1863. It was sold at April term of that year by the sheriff, on a judgment against William Sill to Elisha Beale for $9300, to whom a deed was made. Beale and wife conveyed to Jake Hill, on the 30th of March 1864, for an alleged consideration of $10,000, and the deed was recorded June 18th 1864. The sheriff's deed to Beale was acknowledged July 4th 1863. Suit was brought by the plaintiffs February 15th 1875, against Jake Hill, and served March 16th 1875 on him and on Ewing Cunningham, who was the alleged tenant of P. R. Bohlen. Abstracts of title were filed by the three parties and a plea in behalf of defendant; but no further steps were taken in the cause until December 7th 1878, when the Pittsburgh Savings Bank, having acquired the title of Jake Hill at a sheriff's sale thereof at

[Chirsty *v.* Sill.]

March term 1875, asked and was granted leave to intervene *pro interesse suo.* The cause was tried February 14th 1879, and resulted in favor of the defendants. A new trial was granted and resulted in a special verdict.

The Pittsburgh Savings Bank was a very large creditor of Jake Hill, and had loaned its money after he had acquired title to the property in dispute, and before the Sill heirs had set up any adverse claim. They paid also $5000 in addition for the property which was distributed to other creditors. At the sheriff's sale to the bank, notice was given simply that the property was not Hill's, but belonged to Sill's heirs. It was understood that this claim of title was based upon the assertion that William Sill (who died in 1875), was in the military or naval service of the United States at the time of the sheriff's sale of his property at March term 1863.

The contention of the plaintiff in error was, that the sixth section of the Act of 22d April 1856 was a bar to recovery; and further, that the laches of the plaintiffs below in not preferring their claim for nearly twelve years, after knowledge of the alleged fraud on the part of Hill, the bank and other creditors having in the meantime acquired rights against Hill, also precluded a recovery.

The jury returned a verdict for the plaintiffs, and also found the following facts in a special verdict: "That Jake Hill and Elisha F. Beale were acting in concert at the sheriff's sale of April 27th 1863; that Beale was the nominal purchaser, but Hill paid the purchase-money, and was the real purchaser at that sale; that the said Hill was guilty of false and fraudulent representations at the sale, that he was bidding in the property for the family, and by other fraudulent acts and representations, whereby he induced persons not to bid at the sale, and procured the property to be knocked down to him for less than others would have bid, less than it was worth and less than it would otherwise have sold for; that William Sill, the father of the plaintiffs, died on the 23d day of November 1865, and that he, during his lifetime, and his wife, before his death, had knowledge of fraudulent acts and representations of said Hill at the sheriff's sale, by which he procured the property at less than its value. Subject to the opinion of the court on the question of law reserved, to wit, whether, upon the facts stated in this finding, the plaintiffs can recover in this action, brought more than five years after the death of William Sill, under the statute of 22d April 1856?"

Subsequently the court, White, A. L. J., entered judgment for the plaintiffs, on the reserved question, in an opinion, inter alia, saying:

"The defendants claim that Hill stands on the footing of a trustee *ex maleficio,* and that that brings the case within the sixth section of the Act of 1856. Does he?

[Christy *v.* Sill.]

" All the cases referred to by the able counsel in support of this position are, where the two parties stood in some confidential relation to each other, or had a mutual interest in the subject of controversy and one of them abused that confidence, or took advantage of his position to perpetrate a fraud upon the other. In this case there was no confidential relation existing between Hill and Sill ; Hill owed no duty to Sill in reference to this property ; his false and fraudulent acts at the sheriff's sale would not impeach his title or give any right of action to Sill, but for the Statute of 13 Eliz. That statute punishes him for his fraud ; it declared his title ' to be clearly and utterly void, frustrate and of none effect,' as to Hill and his creditors ; it is the same as if no sale had taken place. Such is its effect as declared by repeated decisions of our Supreme Court: Gilbert *v.* Hoffman, 2 Watts 66 ; McKenna *v.* Fry, 6 Id. 137 ; Walter *v.* Gernant, 1 Harris 515 ; Abbey *v.* Dewey, 1 Casey 413 ; Sharp *v.* Long, 4 Id. 433. As Hill, therefore, does not stand on the footing of a trustee *ex maleficio*, the case does not fall within the Act of 1856.

" No doubt the case comes within the mischief intended to be remedied by the act. There is no good reason why the limitation of five years should not be applied to cases of this kind as well as to those embraced in the act. But we think the words of the statute do not embrace it, and cannot, by any fair and reasonable construction, be extended to it ; to do so would be rather legislation than judicial interpretation."

B. C. Christy, the receiver of the Pittsburgh Savings Bank, took this writ, and alleged that the court erred in entering judgment for the plaintiffs.

*A. M. Brown, J. M. Stoner* and *A. C. Patterson*, for plaintiff in error.—The Act of April 22d 1856, is regarded not as a statute of limitations, but as a statute of repose : Douglass *v.* Lucas, 13 P. F. Smith 9. It should therefore be construed so as to repress recoveries on "secret and unknown claims," especially as against those alleging title under parties who have been long in possession under a recorded title and invested with all the marks of ownership.

Trusts arising from actual fraud are within the act : Maul *v.* Rider, 1 P. F. Smith 377 ; Maul *v.* Rider, 9 Id. 167 ; Rider *v.* Maul, 20 Id. 15. There is a resulting trust in all cases of fraud and where transactions have been carried on mala fide : Lloyd *v.* Spillet, 2 Atk. 150 ; Peebles *v.* Reading, 8 S. & R. 492 ; Brown *v.* Dysinger, 1 Rawle 408 ; Sheriff *v.* Neal, 6 Watts 539 ; Robertson *v.* Robertson, 9 Id. 36 ; Haines *v.* O'Connor, 10 Id. 320. But it is said no trust arises under the facts of this case because there was no parol contract made before the sheriff's sale by Hill with Sill to buy the property for the latter. This is an unsubstantial distinction, because such a parol contract cannot be enforced, and,

[Christy v. Sill.]

where made before a sheriff's sale, the ground on which the purchaser is declared to be a trustee *ex maleficio* is, not that he violated the contract, but that he never intended to keep it. And the distinction certainly is an unsubstantial one where, as in this case, the question to be decided is as to the operation of the sixth section of the Act of 1856. In courts of equity in cases of fraud the mode of administering relief is to declare the fraudulent grantee to be a trustee for the injured party, and thus to imply a trust: Rolfe *v.* Gregory, 4 De Gex, Jones & Smith 576; Perry on Trusts, sect. 106; Bisp. Eq. 92; Willard's Eq. Jur., p. 416. If it be true, then, that courts of equity in general treat fraudulent grantees as trustees, why shall not the facts in this cause be deemed an instance of such implied trusts within the sixth section of the Act of 1856, coming as they do within its spirit, if not within its letter. But if the case is not within the mischief intended to be remedied the plaintiffs should be barred because of their unreasonable delay.

*J. & E. L. Barton*, for defendant in error.—There is no evidence tending to show any previous agreement, contract or confidential relation existing previous to the sale between Hill and Sill, on which to establish a trust, but on the contrary the sale was made in the absence of Sill and without his knowledge, and besides the finding of the jury that the representations of Beale and Hill were false and fraudulent, is conclusive on this question. This cause comes within the ruling of the cases cited by the court below. The distinction between a sale void for fraud under the statute of fraudulent conveyances and one where the purchaser, though he becomes a trustee for one to whom he stood in some confidential relation, by reason of fraud, yet takes a good title, is clearly pointed out in Sharp *v.* Long, 4 Casey 433, McKennan *v.* Pry, 6 Watts 137; Dick *v.* Cooper, 12 Harris 217; Dunn *v.* Truitt, 8 Phila. 27. Another distinction repeatedly made is, that in cases of a trust *ex maleficio* there must be a tender of the purchase-money before bringing suit. In cases of a sale, void under statute of fraudulent conveyances, no such tender is necessary; the purchaser forfeits the money he paid on account of his fraud.

Mr. Justice PAXSON delivered the opinion of the Court, October 25th 1880.

It was not denied that the facts found by the jury in their special verdict constitute a clear case of fraud; that by reason of said fraud Jake Hill acquired no title that he can set up as against the heirs of William Sill, and that those claiming under Hill not being bona fide purchasers without notice, stand in no better position. The defendants, however, set up the Act of 22d of April 1856, as a bar to the plaintiff's recovery. The sixth section of said act pro-

[Christy *v.* Sill.]

vides that "no right of entry shall accrue or action be maintained for a specific performance of any contract for the sale of any real estate, or for any damages for non-compliance with any such contract, or to enforce any equity of redemption after re-entry made for any condition broken, or to enforce any implied or resulting trust as to realty, but within five years after such contract was made, or such equity or trust accrued. * * * Provided, that as to any one affected with a trust. by reason of his fraud, the said limitation shall begin to run only from the discovery thereof; or when by reasonable diligence the party defrauded might have discovered the same." The learned judge of the court below held that the case did not come within the letter of the Act of 1856, although he considered it to be within its spirit, and entered judgment for the plaintiffs below upon the verdict. This ruling was assigned for error here.

The sixth section of the Act of 1856 is not, strictly speaking, an Act of Limitation, but rather of repose. So much was said by the present chief justice in Douglass *v.* Lucas, 13 P. F. Smith, at page 12. It is "an act for the greater certainty of title and more secure enjoyment of real estate," the preamble of which declares its object to be that "the people should acquire, hold and improve their homesteads and estates in the confidence that they will not be lost by secret and unknown claims, or by fraud and perjury." The court below was clearly right in saying that the case comes within its spirit. It is also within the mischief intended to be remedied. We have here an ejectment brought in 1875 for a valuable property and a recovery upon the ground of a fraud committed in 1863 by the purchaser at a sheriff's sale. Said fraud consisted chiefly in obtaining the property at less than its value by falsely pretending that he was bidding it in for the family of the defendant in the execution, and by this and other devices deterring other persons from bidding. There must be some point of time when a purchaser of real estate at a judicial sale shall not have his title cut up by the roots by mere parol evidence of what took place at such sale.; or by a secret trust, disentombed after the lapse of years and set up by the uncertain recollection of witnesses as to remote transactions. The Act of 1856 was evidently intended to' to prevent titles being disturbed in this manner. It is a highly beneficial statute and ought to be liberally construed. It remains to consider whether this case comes within its protection.

That the act was intended to apply to cases of fraud appears both from the preamble and the body of the act. "Fraud" and "perjury" are mentioned in the preamble as among the causes that endanger titles, while the exception in the proviso as to persons affected with a trust by reason of their fraud is conclusive that trusts of this character are within the act. We have then in the sixth section the case of implied and resulting trusts; the former,

[Christy v. Sill.]

implied trusts, including cases of trusts arising from fraud, which are generally known as trusts *ex maleficio*.

It was not denied that if Jake Hill was a trustee *ex maleficio*, the case comes within the act. The contention was that such trusts are confined to cases where there has been a confidential relation between the parties; or that they had a mutual interest in the subject of controversy and one of the parties by a fraud obtained an advantage over the other; that there was no confidential relation between Hill and Sill; that Hill owed no duty to Sill, but that his act was a bare, bald fraud committed upon Sill; that as a result, the title which Hill acquired by the sheriff's sale was absolutely void under the Statute of 13th Elizabeth, and that Hill took no title and was clothed with no trust for Sill by reason of his fraud.

If there was a trust, it is clear it was what is known as a constructive trust, implied by the law from Hill's fraud, and Hill was a trustee *ex maleficio*.

Much stress was given to the fact that Hill's title was absolutely void under the Statute of 13th Elizabeth; that he stood as regards Sill as if no such conveyance had been made; that there was no title in him, and therefore no trust.

It is true, the Statute of 13th Elizabeth does say that as against the party intended to be defrauded, the title shall be " utterly void, frustrate and of none effect." Some little confusion has arisen out of the use of the word " void" in this and other statutes by giving it too broad a meaning. If such title is absolutely void, nothing passes to the fraudulent grantee. Yet he takes sufficient title to pass a good title to an innocent purchaser, and this is so by the terms of the act. And I apprehend the party defrauded could ratify and confirm a conveyance void under the Statute of Elizabeth, which he could not do if it were void in the broad sense of the term. This subject is very fully discussed by Chief Justice LOWRIE in Pearsoll v. Chapin, 8 Wright 9, and the authorities are there collected. In a later case (Seylar v. Carson, 19 P. F. Smith 81), the late Justice WILLIAMS, after citing Pearsoll v. Chapin with approval, proceeds to point out with great clearness the distinction between contracts which are void and those which are merely voidable. He says at page 87 : " The principle on which the distinction rests seems to be this : that is absolutely void which the law or the nature of things forbids to be enforced at all; as contracts to do an illegal act or omit a legal public duty; contracts in a form forbidden by law or made by persons having no legal power or capacity to contract; as bonds of married women. That is relatively void or voidable which the law condemns as a wrong to individuals and refuses to enforce against them; as contracts tainted with fraud or any other wrong against persons. A contract that is absolutely void cannot be ratified or confirmed, for that would be

[*Christy v.* Sill.]

giving sanction and validity to an agreement which the law declares to be illegal and refuses to enforce.   But a contract relatively void, though it cannot be enforced against the defrauded party, is not so void as to vitiate a title under it as against a bona fide purchaser for value and without notice; or to prevent the party intended to be injured by it from renouncing the privilege which the law allows him of rejecting it altogether, or from ratifying it and thus making it his own."

It may be said, as a general proposition, that whenever a person has obtained the property of another by fraud, he is a trustee *ex maleficio* for the person so defrauded.   The reason of it is this: having perpetrated a fraud and by means thereof obtained the property of another, equity will not permit him to enjoy the fruits of his fraud, but will hold him to be but a trustee for the rightful owner.   He is not trustee for the title, for that he never acquired, but of the thing which he has in manual possession.   These and similar cases are not technical trusts, but constructive trusts, or trusts *ex maleficio*.   If, as was contended by the defendants in error, the effect of Hill's fraud was to render his title void under the Statute of Elizabeth and as though no conveyance had been made, then Hill was in possession of Sill's property.   For whom did Hill hold it?   Not for himself, for he had no title.   Being in possession of the property of another by an admitted fraud, can it be doubted that it would have been within the recognised powers of a court of equity to have declared him a trustee by his own wrong of the property?   The very ground of relief in such cases is fraud, not trust.   Equity declares the trust in order that it may lay its hand upon the thing and wrest it from the possession of the wrongdoer.   This principle is distinctly recognised by our leading text writers.   It is said by Mr. Bispham in his excellent treatise on the Principles of Equity at section 92: "Equity, as we shall see, makes use of the machinery of a trust for the purpose of affording redress in cases of fraud; as when a party has acquired the legal title to property by unfair means, he will be deemed to hold it in trust for the injured party who may call for a conveyance thereof.   The party guilty of the fraud is said in such cases to be a trustee *ex maleficio*.   But in such cases the interference of courts of equity is called into play by fraud as a distinct head of equitable jurisdiction; and the complainant's right to relief is based upon that ground, the defendant being treated as a trustee merely for the purpose of working out the equity of the complainant."   In Perry on Trusts the same doctrine is laid down.   I quote from section 106: "If a person obtains the legal title to property by such arts or acts or circumstances of circumvention, imposition or fraud, or if he obtains it by virtue of a confidential relation and influence under such circumstances that he ought not, according to the rules of equity and good conscience, as administered in chan-

[Christy *v.* Sill.]

cery, to nold and enjoy the beneficial interest of the property; courts of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances or relations. When it is said that the person who fraudulently receives or possesses himself of trust property, or who has defrauded another of his estate by misrepresentation, concealment or other fraudulent practices, is converted by the court into a trustee and ordered to account for or reconvey the property, the expression is used for the purpose of describing the nature and extent of the remedy against him, and it denotes that the parties defrauded or beneficially entitled, have the same rights and remedies against him as they would be entitled to against an express trustee who had fraudulently committed a breach of trust." We might multiply citations from the text-books were it necessary.

A confidential relation is not necessary to establish a constructive trust. Such trusts frequently grow out of confidential relations, as our books abundantly show, but that they are essential to a trust *ex maleficio*, I apprehend cannot be shown. I know of no Pennsylvania case which so holds, nor has any such case been called to our attention.

Our own decisions show that trusts arising from actual fraud are within the act: Maul *v.* Rider, 1 P. F. Smith 377, and 9 Id. 167; Rider *v.* Maul, 20 Id. 15. And while the point is not expressly ruled, it has been laid down as a general proposition in several cases that there is a constructive or implied trust in all cases of fraud, and where transactions have been carried on mala fide. Thus it was said by Justice DUNCAN in Peebles *v.* Reading, 8 S. & R. at page 492 : " If, by the artifice of the purchaser declaring that he was to buy for the owner, others were prevented from bidding, and the land was sold at a great under value, this would make him a trustee." The learned judge meant, of course, a trustee *ex maleficio*. And again, in Haines *v.* O'Connor, 10 Watts 313, it was said by Justice ROGERS that " a purchaser at a sheriff's sale, who has paid the money, can only be held a trustee *ex maleficio* on the ground of fraud; and where he is guilty of fraud, he is a trustee for the creditors and for the debtor also, unless the debtor be *particeps criminis*." Of course, there must be something more than the violation of a parol agreement in relation to land in order to raise a trust *ex maleficio*. The violation of such an agreement is no more than the violation of any other contract, and the party must be left to his legal remedy. Besides, such agreements are in contravention of the Statute of Frauds and Perjuries.

It is a mistake to suppose that because Hill was a trustee *ex maleficio* for Sill, that he was a trustee with a good title; in other words, that he was such a trustee as would entitle him to a tender of what he had paid before there could be a recovery against him. Hill had no title at all under the cases of Gilbert *v.* Hoffman, 2

[Christy *v*. Sill.]

Watts 66; McKenna *v*. Pry, 6 Id. 137; Walter *v*. Gernant, 1 Harris 515; Abbey *v*. Dewey, 1 Casey 413, and Sharp *v*. Long, 4 Id. 433. But as before said, he was in possession of the property of another man, which property he had obtained by fraud, and it is not straining the law to say that his fraud made him a trustee for the rightful owner.

Even if we had some doubt as to the correctness of our conclusions, which we have not, the case comes so plainly within the spirit of the Act of 1856 and within the mischief sought to be remedied, we would be justified in holding it to be within the act under the authority of Versailles *v*. Mifflin, 10 Watts 360, and Overseers of Sugarloaf *v*. Directors of Schuylkill County, 8 Wright 481, where cases not strictly within the letter of the Act of Assembly in regard to the removal of paupers were held to be within its spirit.

We are of opinion that the defendants are protected by the Act of 1856.

> The judgment is reversed and judgment is now entered for the defendant below *non obstante veredicto*.