## Johnson et al. *v.* Hobensack, Appellant.

Argued January 22, 1935.   Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Roland R. Foulke,* with him *Nelson P. Fegley,* for appellant.

*G. Herbert Jenkins,* for appellees.

Opinion by Mr. Justice Maxey, April 1, 1935:

This is a proceeding upon a bill in equity filed by the plaintiffs against the widow of their deceased brother to establish a constructive trust in certain property deeded to the respondent, individually, by her husband and his sisters, the plaintiffs, and to compel an accounting by the respondent, as her husband's executrix, of his accounts as assignee of a deceased brother. A decree nisi was entered ordering the accounting prayed for, and to the account which respondent submitted in obedience thereto plaintiffs filed exceptions which after a hearing were sustained. Accordingly, the court below entered a final decree declaring the respondent to be a constructive trustee for the plaintiffs of a fractional interest (less than one-sixth) in the property. Respondent appealed.

The relevant facts are these: Susan Hobensack, wife of Henry H. Hobensack, died in 1909, survived by her husband and four children: two daughters who are the plaintiffs herein, and two sons, Harry Hobensack and J. Rex Hobensack, both of the latter being now deceased. The last named was the husband of respondent. On March 25, 1920, Harry Hobensack assigned to J. Rex Hobensack all his right, title, and interest in the estate of their mother to an amount sufficient to cover the assignor's debts (including those due the assignee individually *and as trustee for the father),* which the assignee was thereby authorized to pay. Harry Hobensack died May 7, 1921, intestate, and his brother, J. Rex Hobensack, was appointed administrator of his estate. The estate of Susan Hobensack was not finally settled and distributed until February 25, 1922, at which time J. Rex Hobensack, as assignee of his brother's interest in the mother's estate, received checks totaling $3,393.18. After deducting a sum sufficient to satisfy the assignor's individual indebtedness to his brother, the assignee, there remained a balance of $2,360.40. Out of this balance, the

sum of $2,054.18, with interest from February 25, 1922, was due J. Rex Hobensack as *assignee* of Harry Hobensack, to J. Rex Hobensack as *trustee* under a deed of trust dated February 18, 1920, executed by his late father, Henry H. Hobensack, by which he, J. Rex Hobensack, became vested *as trustee* with the title of all the real estate of his father, wherever situated, and also of all his father's personal property and in all other estates in which the father might have any interest, the conditions of the trust being that out of the income and so much of the principal as it might be necessary to use of this trust res the father would be supported during his life, the property cared for, taxes paid and that after the father's death the trustee would convey the trust property unto the executors of the father for settlement and distribution under the father's last will and testament or in default of such, then to the heirs or legal representatives of Henry H. Hobensack according to the intestate laws. The father died intestate on December 13, 1921, and J. Rex Hobensack was appointed administrator. The debt of Harry Hobensack to the trust estate was for money advanced to him from the trust estate and was evidenced by a judgment note executed by him on March 25, 1920, to J. Rex Hobensack, trustee.

J. Rex Hobensack, as assignee, did not distribute from the balance of the assigned fund any amount in payment of the indebtedness due the trust estate by himself as assignee of Harry Hobensack, but he misapplied this balance of $2,360.40, which was due the trust estate (of which he was trustee) in the following manner: On February 17, 1922, he conveyed 51½ acres of land belonging to the trust estate, to the heirs of Henry H. Hobensack, i. e., to himself and his two sisters (the latter being the present plaintiffs). On the following day these heirs deeded it to Blanche M. Hobensack, the defendant, who was J. Rex Hobensack's wife. The bill filed is not founded upon the fact of this conveyance of trust property, for the parties in interest agreed to such conveyance, though

the bill does refer to the agreed price of $15,000 as being "extremely low." The complaint is, and the court below upheld it, that the part of the purchase money used by J. Rex Hobensack, to wit, $2,360.40, was trust funds which should have been used to pay the debt of Harry Hobensack to the estate of which he, J. Rex Hobensack, was trustee, and that the action of J. Rex Hobensack in using this sum as part payment on March 1, 1922, of the purchase price of the real estate conveyed to his wife constituted a misapplication of the funds received by him under his brother's assignment, that the assignment was to the extent of $2,360.40 for the benefit of the estate of which J. Rex Hobensack was trustee and it could not properly be used by him in paying for real estate for his wife. On this point the court below said: "Since the assigned fund was for its benefit, the trust estate under the deed executed by Henry H. Hobensack was a creditor, for whom the assignee held the money in trust. As such it has a right to enforce the duty undertaken by the assignee: Smith v. Equitable Trust Co., 215 Pa. 418, 420, [64 A. 594], (1906), POTTER, J." Since the purchase price of the land was $15,000 and the trust res was converted from $2,360.40 to a $2360.40/15000$ interest in this land, plaintiffs demanded that equity impose a constructive trust on the latter to this fractional extent. The court below did so after overruling defendant's plea that the claim of plaintiffs was barred by section 6 of the Act of April 22, 1856, P. L. 532. Though this statute provides that no action shall be maintained to enforce any implied or resulting trust as to realty "but within five years after . . . such equity or trust accrued," it also provides that "as to any one affected with a trust, by reason of his fraud, the said limitation shall begin to run only from the discovery thereof, or when, by reasonable diligence, the party defrauded might have discovered the same." The view of the court below was that the parties alleged to be here defrauded could not have discovered the same earlier, or much earlier, than they did discover

it, and that, therefore, the five-year limitation of the Act of 1856 did not apply.

The date of the fraudulent act complained of was March 1, 1922. The bill in this case was filed on February 24, 1928, or about six years later. Clearly plaintiffs were barred by the Act of April 22, 1856, P. L. 532, *if by reasonable diligence they might have discovered the same within five years after the trust accrued.* In Smith v. Blachley, 198 Pa. 173, 179, 47 A. 985, this court said, in an opinion by Mr. Justice MITCHELL: "Fraud is always concealed. If it was not no fraud would ever succeed. But when it is accomplished and ended, the rights of the parties are fixed. The right of action is complete. If plaintiff bestirs himself to inquire, he has ample time to investigate and bring his action. If both parties rest on their oars the statute runs its regular course. But if the wrongdoer adds to his original fraud, affirmative efforts to divert or mislead or prevent discovery, then he gives to his original act a continuing character by virtue of which he deprives it of the protection of the statute until discovery. . . . There is no evidence to show that, after the transaction was complete by the receipt of the money, the defendant ever did anything to prevent inquiry. . . . Plaintiffs, if they had been diligent, could have tested the truth of the whole story. . . . There was nothing said or done by him [defendant] after that [i. e., the obtaining of the money] bearing in any way on investigation, and plaintiffs knew no facts in 1895, when they brought suit, which they did not know in 1888. The gradual leaking out of the circumstances and the gossip and suspicions of others started an investigation by plaintiffs, which the most ordinary prudence would have prompted at the beginning, and which would then have either foiled the scheme or led to its discovery, and the trial of this action while all the witnesses were alive and the matters fresh in their memories."

The foregoing statement by Justice MITCHELL applies equally well to the case at bar. When this bill was filed,

J. Rex Hobensack had been dead two years and four months. The attorney who appeared at the sale for the Hobensack heirs and who also was the attorney for J. Rex Hobensack on matters relating to his father's and brother's estates, had also died before the bill was filed. If there was fraud in this case, it was complete on March 1, 1922, when J. Rex Hobensack used the sum of $2,360.40 to pay for the land conveyed to his wife when in fact he should have used it to pay the debt of *Harry* Hobensack to the estate of which *J. Rex* Hobensack was trustee. Had plaintiffs acted with reasonable diligence in safeguarding their interests, they would have discovered this fraud at or shortly after the time it was perpetrated. No *new* facts relating to the wrongful use of this alleged trust fund of $2,360.40 ever subsequently became known, or were made available by the account which respondent filed.

The bill filed here was clearly barred by the Act of 1856, supra. This court said in Christy v. Sill, 95 Pa. 380, and Way v. Hooton, 156 Pa. 8, 26 A. 784, that this act is a statute of repose enacted "for the greater certainty of title and more secure enjoyments of real estate." In Taylor v. Coggins, 244 Pa. 228, 90 A. 633, this court adopted the language of the court below, reading as follows: "Laches is not excused by simply saying: 'I did not know.' If by diligence a fact can be ascertained the want of knowledge so caused is no excuse for a stale claim. The test is not what the plaintiff knows, 'but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him': Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co., 167 Pa. 136 [31 A. 484]."

In the instant case the court below said: "Plaintiffs as cestuis que trust of the trust created by Henry H. Hobensack . . . had a right to rely upon J. Rex Hobensack, as trustee, to perform his duty and collect the amount due from the assigned fund of Harry Hobensack. When the trustee died due diligence demanded they investigate his

conduct as such." We hold that due diligence demands that a cestui que trust should not wait until a trustee dies before the former brings his vigilance into activity to check up the administration of the trust. Something earlier than post-mortem vigilance is due even to the trustee himself so that if his stewardship is impeached he may have an opportunity to meet the attack.

It appeared at the hearing in this case that the records and papers of both J. Rex Hobensack and the attorney at the sale were in considerable confusion, so that in stating her account as executrix of her husband's estate and representative of him as trustee, the defendant was greatly handicapped. It cannot be asserted with certainty that had J. Rex Hobensack and the attorney most familiar with this case been alive, they would at the time of the hearing not have been able to show a proper expenditure of all this money which came into the possession of J. Rex Hobensack in his various representative capacities, and particularly in his capacity as assignee of his brother's interest in the mother's estate. One of the purposes of statutes of limitations is to prevent the injustice that may result from belated litigation. A long lapse of time and the death of parties who possessed intimate and accurate knowledge of the facts are likely to make it difficult to render substantial justice. In Riley v. Boynton Coal Co., 305 Pa. 364, 368, 157 A. 794, we said: "Our various statutes of limitations and the rulings of chancellors upon pleas of laches are expressive of the feelings of mankind that, where there are wrongs to be redressed, they should be redressed without unreasonable delay, and where there are rights to be enforced, they should be enforced without unreasonable delay. Those who have interests, which they wish to have judicially characterized as legal rights, should take prompt measures to bring such interests before the proper tribunals. Persons against whom actions may be threatened have claims to judicial consideration as well as those who threaten such actions; both are equally entitled to have the contro-

312

versy between them promptly adjudicated while witnesses are still available and memories are undimmed by long intervening years."

The assignments of error are sustained and the decree of the court below is reversed at the cost of the appellees.

DISSENTING OPINION BY MR. JUSTICE DREW:

I cannot concur in the conclusion reached by the majority opinion.

The relevant facts may be briefly recounted as follows: Decedent was in charge of the administration and settlement of at least four trusts and estates, of which plaintiffs, sisters of decedent, were beneficiaries. On March 1, 1922, decedent misappropriated funds of one of the trusts to meet in part the purchase price of real estate taken in the name of his wife, the present defendant. The evidence and the chancellor's findings show that plaintiffs did not know of this breach of trust until some time after their brother's death on October 7, 1925. The discovery was made by counsel whom they had employed to protect their rights. The evidence shows that they had repeatedly requested their brother to account for the various funds in his possession, both before and after the fraud was committed. He and his wife made various excuses, but assured plaintiffs that the estates were being properly handled and that they would be settled as soon as possible. Thus plaintiffs were led to believe that everything would be disposed of in due course. With the trustee's death they took steps toward investigation. It was only then that they became aware of the misappropriation. Nor were they aided in their efforts by defendant. The latter, immediately after her husband's death, submitted statements containing incorrect items. Approximately two years after they became aware of the fraud, plaintiffs filed the present bill.

Section 6 of the Act of April 22, 1856, P. L. 532, provides that no action shall be maintained to enforce any implied or resulting trust as to realty except within five

years after such trust accrued, *"Provided,* That as to anyone affected with a trust by reason of his fraud, the said limitation shall begin to run only from the discovery thereof, or when by reasonable diligence the party defrauded might have discovered the same." The majority opinion erroneously concludes that the effect of the statute is to bar plaintiffs "if by reasonable diligence they might have discovered [the fraud] within five years after the trust accrued." This is a manifest misconstruction of the plain wording of the act. The language of the statute is clear that where fraud is the basis of the trust the five-year limitation *begins to run* (1) "only from the discovery thereof," or (2) from the time "when by reasonable diligence the party defrauded might have discovered the same." If in the exercise of reasonable diligence the fraud could not be discovered until nearly four years after its commission, the five-year period would begin to run only at that time. The statutory period would be suspended during the interim of justifiable ignorance.

In the instant case the wrongdoer was a fiduciary, in whom plaintiffs, as beneficiaries of the trust, were entitled to put their confidence. The control and management of the property had been entrusted to him. In the absence of circumstances tending to arouse suspicion or awaken inquiry, plaintiffs were entitled to assume that he would carry out the purposes for which the property had been given to him. "The words of the act of assembly are not 'when the party defrauded might have discovered the same,' but when 'by reasonable diligence' he might have done so. These words are surely not to be rejected and the act construed as if they were not in it. There are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence": Maul v. Rider, 59 Pa. 167, 171, *per* SHARSWOOD, J.; see Madole v. Miller, 276 Pa. 131, 136-7. There were abso-

lutely no facts or circumstances in the instant case which would tend to arouse the suspicion of a reasonable beneficiary that there had been wrongdoing on the part of the fiduciary.

The majority opinion is in error in so far as it impliedly requires that the fraud be affirmatively concealed. There is no such requirement in the Act of 1856, supra. Smith v. Blachley, 198 Pa. 173, cited by the majority, was decided under a different statute which contained no express exception in cases of fraud. But even if such a requirement is to be read into the Act of 1856, the repetition of excuses for delay and assurances that the trust was being handled properly constituted active concealment of the fraud with a view to prevent disclosure: Madole v. Miller, supra. Plaintiffs' excusable delay resulted in no prejudice to defendant, and equity should now compel restitution. To hold otherwise on the facts of this case would be to put a premium upon fraud. I would affirm the decree of the court below.