432 A.2d 968

**ESTATE OF Arthur Ralph THOMAS, Deceased.**

**Appeal of Myrtle C. THOMAS et al.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1980.
Decided Jan. 27, 1981.

Robert W. Lentz and Thomas A. Riley, Jr., Pioli, for appellant.

Minturn T. Wright, III, F. Hastings Griffin, Jr., Linda A. Fisher, Philadelphia, for PNB.

## OPINION OF THE COURT

ROBERTS, Justice.

■ This is an appeal from a final decree of the Orphans' Court Division of the Court of Common Pleas of Montgom-

ery County sustaining the preliminary objections of appellee Philadelphia National Bank (PNB), co-executor of the estate of Arthur Thomas, and dismissing a petition filed by his widow, appellant Myrtle Thomas. The petition, filed on November 3, 1978, sought to reopen the 1970–71 account, adjudication and schedule of distribution of her husband's estate seven years after judicial confirmation of the schedule of distribution. In 1971 appellant had signed her approval to that schedule, which clearly recited the striking short-term decline—by nearly fifty percent—in the value of the principal asset of the estate, 82,533 shares of stock in STV, Inc. The orphans' court determined that appellant had had notice for over seven years of the drastic decline in fortune of her husband's company from 1970 to 1971 and could have inquired into the circumstances surrounding that decline at any time during the statutory five-year period for the reopening of an account, 20 Pa.C.S.A. § 3521. It thus held that she was barred by laches from asserting her belated claim. We agree and affirm.

Arthur Thomas died testate on May 10, 1968, leaving his entire estate to appellant in two trusts and naming his business partner Whitney Sanders and appellee Philadelphia National Bank as co-executors and co-trustees. Testator authorized his executors to "accept in kind and retain any property which I may own at my death without regard to any principle of diversification." As stated previously, the principal asset of his estate consisted of 82,533 shares of stock in STV, Inc., the successor by merger to a company founded by decedent and co-executor Whitney Sanders. On April 15, 1970, the executors filed the first and final account of the estate, listing the value of the STV shares at $1,320,-528. No exceptions to the adjudication were filed, and the account was confirmed absolutely by the orphans' court on July 26, 1970.

The executors then prepared a schedule of distribution dated May 18, 1971, which revalued as of that date those assets which had been retained by the estate. The schedule clearly indicated the decline in value of the STV stock from

$1,320,528 ($16 per share) to $691,213.88 ($8.375 per share) and a total loss on reappraisal of $632,817.25 (see Appendix). Appellant then signed her approval to the schedule containing this graphic evidence of the dramatic decline in value of the major asset of the estate. The schedule was filed with the court on July 14, 1971, and subsequently confirmed. In December 1971, in compliance with the decree of distribution, the executors completed actual distribution from the estate to themselves as trustees of the marital and residuary trusts.

Seven years later, on November 3, 1978, appellant filed the petition to open now at issue.[1] The petition alleges fraud in the failure of co-executor PNB to disclose that its commercial department had made a loan of $1,050,000 to STV, Inc., in 1969. The corporation used the proceeds of this loan to repurchase 70,000 outstanding shares of STV stock from a shareholder other than appellant at the then book value of $15 per share. The petition further alleges that this loan precipitated the decline in value of the remaining STV stock and that appellant learned only recently of this transaction. The orphans' court sustained the preliminary objections of appellee PNB and dismissed the petition. This appeal followed.

■ In the interest of finality, section 3521 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. § 3521, permits a beneficiary to petition to reopen an account only if the petition is made within five years of the confirmation of the account and before distribution. As this Court has stated in commenting on the predecessor to section 3521:

"There may be particular cases of hardships in this law, but the [benefits] of the provisions of these acts of assembly far overbalance these particular cases. These acts,

1. On August 1, 1978, appellant filed a petition with the Orphans' Court of Montgomery County seeking an accounting of the marital and residuary trusts and removal of Philadelphia National Bank as trustee. On November 3, 1978, appellant filed objections to the accounts of both trusts seeking to surcharge the trustee. These proceedings are pending in the Orphans' Court and our determination here neither affects nor prejudices these pending actions.

whilst they give to the vigilant every means of redress necessary for their protection, fix a period when all litigation is at an end."

*Stetson's Estate*, 305 Pa. 62, 69, 155 A. 856, 858 (1931). The statutory bar to applications for review after the expiration of the five-year period is absolute "unless fraud is alleged and proved." *Thorne's Estate*, 344 Pa. 503, 510, 25 A.2d 811, 815 (1942); accord, *Shewchuk Estate*, 444 Pa. 249, 282 A.2d 307 (1971); *Elkin's Estate*, 325 Pa. 373, 190 A. 650 (1937); *Stetson's Estate*, supra.

■ Although appellant's petition alleges fraud, *Thorne's Estate* makes clear that more is required than this bare allegation:

"By fraud as used in the opinions qualifying the five years' limitation in section 48 of the Fiduciaries Act [the predecessor of section 3521] is meant such fraud as operates to prevent the fiduciary or 'any person interested' from taking action within the five years' period to secure the review of the account. . . . A plaintiff who charges fraud 'is not only chargeable with what he knew but also with what he could have discovered with reasonable diligence.' "

344 Pa. at 510–11, 25 A.2d at 815, quoting *Kinter v. Commonwealth Trust Co.*, 274 Pa. 436, 118 A. 392 (1922); accord, *Hamilton's Estate*, 351 Pa. 419, 41 A.2d 567 (1945). Thus, as the orphans' court properly recognized, the issue on preliminary objections is not whether PNB's failure to disclose the loan made by its commercial department to STV constituted fraud. Rather, the issue is whether appellant could have discovered, "with reasonable diligence," the existence of the loan prior to the expiration of the five-year period for review mandated by statute.

Our decision in *Mershon Estate*, 364 Pa. 549, 73 A.2d 686 (1950), aff'g per curiam 69 D. & C. 40 (O.C. Philadelphia), is controlling. There a petition was filed within the statutory five-year period for review to challenge a fiduciary's retention of stock which had become worthless. Although the petition alleged, *inter alia*, fraudulent dealings by the corpo-

rate trustee, this Court affirmed its dismissal on preliminary objections. In so doing we adopted the language of the orphans' court (Klein, J.):

"[P]etitioners, being persons of full age, and having received notice of the filing and audit of the account, should have made a reasonable, diligent, and contemporaneous inquiry to ascertain the causes for the losses in connection with the Philadelphia Company stock. Having failed to act in defense of their rights at the time of the audit, they are therefore now barred by their laches from obtaining the review which they are belatedly seeking."

364 Pa. at 552–553, 73 A.2d at 688. Here, appellant had notice in the middle of 1971 that the value of the major asset of her husband's estate had declined by nearly fifty percent, yet she failed to act on that information until the end of 1978. An inspection of the corporate records of STV, Inc., to which she was entitled under 15 P.S. § 1308, would certainly have revealed the existence of the loan of which she now complains.[2]

In these circumstances, principles of finality manifestly compel the dismissal of appellant's belated petition, for "[i]f by diligence a fact can be ascertained, the want of knowledge so caused is no excuse for a stale claim." *Taylor v. Coggins*, 244 Pa. 228, 231, 90 A. 633, 634 (1914); accord, e. g.,

---

**2.** Appellant cannot claim that she did not understand the schedule of distribution to which she signed her approval:

"In *Pennsylvania Railroad Company v. Shay*, 82 Pa. 198, Mr. Justice Sharswood says: 'As is said by Chief Justice Gibson, in *Greenfield's Est.*, 14 Pa. 489, "If a party, who can read, will not read a deed put before him for execution; or if, being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which, I take it, is not the subject of protection, either in equity or at law." ' "

*O'Reilly v. Reading Trust Co.*, 262 Pa. 337, 343–44, 105 A. 542, 544 (1918); accord, *Yohe v. Yohe*, 466 Pa. 405, 353 A.2d 417 (1976) (failure to read deed before signing bars action to set aside conveyance); *General Refrigerator and Store Fixture Co. v. Fry*, 393 Pa. 15, 141 A.2d 836 (1958) (failure to read surety agreement before signing no defense to action on agreement). This principle applies with equal force to a schedule of distribution which, as here, details the financial decline of an estate with unmistakeable clarity. (See Appendix).

*Mershon Estate,* 364 Pa. 549, 73 A.2d 686 (1950); *Thorne's Estate,* supra; *Johnson v. Hobensack,* 318 Pa. 305, 178 A. 40 (1935).

Accordingly, the decree of the orphans' court is affirmed. Each party pay own costs.

## APPENDIX

Schedule of Distribution

|  | Forwarded | $1,429,966.46 |
|---|---|---|

The foregoing Balance for Distribution of $1,429,966.46 is composed as follows and reappraised as of October 2, 1970 for purposes of equitable distribution:

|  | Value as of 5/18/71 | Book Value |  |
|---|---|---|---|
| 200 shs. American Electric Power Company, Common, Par $6.50 | $ 5,550.00 | 6,812.50 |  |
| 500 shs. American Telephone & Telegraph Company, Capital, Par $16.66 2/3 | 23,312.50 | 24,812.50 |  |
| 500 shs. General Motors Corporation, Common, Par $1.66 2/3 | 42,437.50 | 41,125.00 |  |
| 82,533 shs. S. T. V., Inc., Common, Par $1. | 691,213.88 | 1,320,528.00 |  |
| 200 shs. Standard Oil Company of Indiana, Capital, Par $12.50 | 12,050.00 | 10,400.00 |  |
| 125 shs. TRW, Inc., Cum. Serial Pfd., Stock II, $4.40 Conv., Series 1, No Par | 11,781.25 | 15,484.38 |  |
| Cancellation Value of Policy #WY10869010D of Travelers Insurance Company, covering 1964 32 foot Chris Craft Skiff | 82.45 | 82.45 |  |
| 1964 32 foot Chris Craft Skiff | 5,974.50 | 5,974.50 |  |
| Distribution Account of First and Final Account | 1,782.48 | 1,782.48 |  |
| Cash | 2,964.65 | 2,964.65 |  |
|  | $797,149.21 | $1,429,966.46 |  |
|  |  | 797,149.21 |  |
| Loss on reappraisal |  |  | 632,817.25 |
| Reappraised Balance for Distribution |  |  | $ 797,149.21 |
| OF WHICH THERE IS AWARDED: |  |  |  |
| TO: MYRTLE C. THOMAS |  |  |  |
| Bequest per Item TWO of Will: |  |  |  |
| Distributed per Distribution Account of First and Final Account | $ 1,782.48 |  |  |
| Forward | $ 1,782.48 |  | $ 797,149.21 |