565 A.2d 1207

**In re ESTATE OF Dorothy M. DOERR, Deceased.**

**Appeal of Frank E. DOERR.**

Superior Court of Pennsylvania.

Argued Aug. 24, 1989.

Filed Oct. 31, 1989.

---

476

Robert W. Beilstein, Pittsburgh, for appellant.

Richard W. Hosking, Pittsburgh, for Janet Kersting, participating party.

Before CAVANAUGH, BROSKY and ROWLEY, JJ.

CAVANAUGH, Judge:

This case involves an action brought by Mellon Bank, N.A., Executor of the Estate of Dorothy M. Doerr, Deceased, to adjudicate title to personal property pursuant to 20 Pa.C.S. 711(17).[1] The personal property at issue is stock representing a 51% interest in Doerr Bros., Inc., which Dorothy M. Doerr, decedent, bequeathed to her daughter, Janet Doerr Kersting, appellee. Mellon Bank brought this action when appellant, Frank E. Doerr, son of decedent and brother of appellee, refused to transfer the stock so that the bank could distribute it to Mrs. Kersting according to the terms of decedent's will. The trial court entered an order vesting fee simple title to the stock in appellee. The court *en banc* dismissed the exceptions of appellant and this appeal follows.

Appellant and appellee are the natural children of decedent and Frank A. Doerr, Jr., as is another daughter, Dorothy K. Rothert, who was a party below but has not joined her brother in this appeal. The present dispute arose after appellant discovered that his mother's will left stock representing a 51% interest in the family company, which he presently runs, to his sister, instead of himself. Decedent had acquired essentially the same stock as a bequest from

1. The Probate, Estates and Fiduciary Code, 20 Pa.C.S. § 711(17) provides in pertinent part:
   ... [t]he jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:

   (17) Title to personal property. The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of his death.

her husband, Frank A. Doerr, Jr., who died in 1971 owning more than 99% of Doerr Bros., Inc.[2]

Decedent received the stock pursuant to an uncontested decree, dated May 2, 1973, in the Estate of Frank Doerr, Jr., No. 798 of 1971, Allegheny County Orphan's Court, which made no mention of, or provision for, a life estate. The 1973 decree also awarded to appellant stock representing a 49% interest in the company. Stock certificates evidencing ownership in each of the two legatees were issued to them. Soon thereafter, the Board of Directors of Doerr Bros., Inc, undertook a stock redemption scheme in which a similar ratio of ownership between appellant and decedent was maintained. Neither the original nor the reissued stock certificates bore any restrictive legends, nor was there any other indication that Dorothy M. Doerr's shares were being held in trust for her during her lifetime.

■ We agree with the trial court that laches bars appellant's present claim that his mother had only a life estate and that he possessed a remainder interest in the stock.[3] The application of laches depends on whether the complaining party is guilty of a want of due diligence in failing to assert his rights, which works to another's prejudice. *In re Estate of Marushak,* 488 Pa. 607, 413 A.2d 649 (1980); *Leedom v. Thomas,* 473 Pa. 193, 373 A.2d 1329 (1977).

**2.** Frank A. Doerr, Jr.'s holographic will contained the following bequests, which have precipitated the present dispute over the validity of decedent's disposition of the stock in favor of Mrs. Kersting:

... she [Dorothy M. Bischof Doerr, mother of appellant and appellee] is also to have 51% of my holding in Doerr Bros. Inc. stock making her the majority stockholder as long as she lives. To my son Frank E. Doerr I leave the balance of my stock common and preferred in Doerr Bros., Inc....

Appellant argues that the phrase "making her the majority shareholder as long as she lives" acts as words of limitation. Thus, appellant claims that Mrs. Doerr took only a life estate and that the gift over, as well as a bequest of the remaining shares, is contained in the phrase, "I leave the balance...." We do not reach the interpretation issue in this appeal.

**3.** The trial court found that laches and the statute of limitations prevented appellant from bringing this action. *En banc,* the court reached the merits but still found for appellee on the basis of the language in Frank A. Doerr, Jr.'s will.

Laches requires not only a passage of time, but also a resultant prejudice to the party asserting the doctrine. *Young v. Hall*, 421 Pa. 214, 218 A.2d 781 (1966) *citing Miller v. Hawkins*, 416 Pa. 180, 205 A.2d 429 (1964). Laches is based on "some change in the condition or relations of the parties which occurs during the period the complainant unreasonably failed to act." *Leedom*, 473 Pa. at 201, 373 A.2d at 1333. Laches is a factual issue and depends upon the circumstances of the individual case. *Siegel v. Engstrom*, 427 Pa. 381, 235 A.2d 365 (1967).

As the trial court found, Frank E. Doerr had "ample time and opportunity" but nonetheless failed to question the interpretation and effect given to his father's will following the entry of the 1973 decree. (Opinion of Zavarella, A.J., at 13.) Moreover, the trial court observed that the actions of appellant were wholly inconsistent with a belief that his mother possessed only a life estate. *Id.* Finally, appellee has been prejudiced by appellant's conduct. Virtually all of the evidence in the record supports these conclusions.

The parties stipulated to the following facts. At the time of her death, decedent was in possession of Stock Certificate No. 18, representing 400 shares of common stock of Doerr Bros., Inc. and also of Stock Certificate No. 21, representing 315 shares of preferred stock of Doerr Bros., Inc. These certificates were issued to decedent in September, 1973 at a meeting of the Board of Directors of Doerr Bros., Inc., at which time decedent surrendered for cancellation Stock Certificate No. 15, representing 510 shares of the common stock of Doerr Bros., Inc. and Stock Certificate No. 18, representing 400 shares of the preferred stock of Doerr Bros., Inc. The latter two certificates were the ones which had been issued to decedent under the 1973 decree in her husband's estate. All of the aforementioned certificates were signed by appellant as president of Doerr Bros., Inc. None of them bears any restrictive legend of any kind, nor are any restrictions noted in the stock register of Doerr Bros., Inc.

The purpose of the stock redemption scheme, which appellant helped to structure, was to maintain Mrs. Doerr's 51% interest in the company while providing funds for the administration of her husband's estate. Appellant likewise exchanged stock representing his 49% interest (most of which had come to him by virtue of his father's will) at the same board meeting.

It is beyond dispute that, at the time of the 1971 probate of the elder Doerr's will and administration of his estate, the possibility that decedent held only a life estate never came up. Every witness connected with the 1971 estate administration, except appellant and Mrs. Rothert, testified that it was taken for granted that decedent had absolute title to the stock. Appellant now claims that he never raised the issue because he believed the language of his father's will so clearly bequeathed only a life estate as to make any mention of his belief unnecessary.

Yet none of the surrounding circumstances render that belief reasonable. In light of appellant's conduct, his professed belief is not even plausible. Appellant admits that in the course of his extensive dealings with Doerr Bros., Inc.'s accountant Don Meredith during the administration of his father's estate, he never once noted that his mother had only a life estate. During the issuance and redemption of decedent's shares, he in no way indicated, on the stock certificates themselves or in Doerr Bros. corporate records, that his mother's interest was any less than absolute. Ample testimony in the record would support a finding that appellant was concerned over his mother's majority ownership and had discussed the possibility of buying her out. And the testimony is uncontroverted that appellant was shocked and disappointed to discover, not that decedent believed she owned the stock outright, but rather that she did not leave the stock to him.

Even if we accept appellant's assertions that he always thought the stock would pass to him, due diligence is the standard by which appellant's protection of his interests is to be judged and under which his claim fails. The 1973

decree, of which Mr. Doerr plainly had notice, was a final disposition of the property of the elder Doerr's estate and as such prejudiced appellant's interests. *In re Mershon's Estate*, 364 Pa. 549, 73 A.2d 686 (1950) (the audit of a fiduciary's account is a formal legal proceeding at which all interested parties, who are chargeable not only with what they knew but also with what they could have discovered through the exercise of due diligence, must voice or forego their objections to the management of the estate). In light of all the information available to him at the time, appellant's silence subsequent to the filing of the account in his father's estate was an unreasonable failure to protect his rights, such as they were.

Appellant relies heavily upon *In re Western Pennsylvania National Bank* (also known as *Moltrup Estate* ), 424 Pa. 161, 225 A.2d 676 (1967), to argue that he was not required to assert his rights as a potential remainderman in response to the 1973 decree because a remainderman's rights do not accrue until the death of the life tenant. What the *Moltrup* court actually decided was that remaindermen, whose only notice of the filing of the estate account was by newspaper advertisement, were not foreclosed by res judicata nor by estoppel from asserting their rights upon the death of the life tenant.

*Moltrup* is distinguishable from the instant appeal for two reasons. First, the court specifically stated:

We ... place our decision on the ground that no actual or appropriate notice of [the life tenant's] present claim was ever given to the remaindermen until after [the life tenant's] death.

... Certainly the record, the advertisement and the above-mentioned award to [the life tenant], with no actual notice to present and potential remaindermen—some of whom were unknown or unborn and all of whom were unrepresented—of the claim which [the life tenant's] executors made after [the life tenant's] death ... could not bar the interest of remaindermen who had no notice of [the life tenant's] claim.

*Moltrup*, 424 Pa. at 173, 225 A.2d at 681–82. A motivating concern for the *Moltrup* court was that some of the *Moltrup* remaindermen were unborn or unknown at the time of the testator's death and that none of them received actual or appropriate notice of the pro forma confirmation of the account. In the instant case, the trial court found it "extremely doubtful" that appellant did not receive actual notice of the account. (Opinion of Zavarella, A.J., at 11.) At the very least, he should have known of it.

Second, *Moltrup* has limited applicability to the present appeal because it did not even address the issue of laches. The court merely refused to find that a decree was *res judicata* against individuals who were not party to it and did not have actual or appropriate notice of it. It is indeed consistent with the reasoning employed by the *Moltrup* court for us to find that a would-be remainderman who has *actual* notice of a distribution antithetical to his own interests but who remains silent until the death of the supposed life tenant, may be equitably precluded from asserting that claim if his silence has incurably prejudiced legatees under the life tenant's will. *See also, Bailey v. Bailey*, 338 Pa. 221, 12 A.2d 577 (1940) (where nothing new had transpired and no new facts had come to light, judgement debtors who had neglected to raise defenses in successive *scira facias* proceedings could not do so now that holder of note was dead); *Estate of Thomas*, 495 Pa. 93, 432 A.2d 968 (1981); *Mershon*, 364 Pa. at 549, 73 A.2d at 686.

The instant case graphically illustrates the kind of prejudice inherent in permitting a purported remainderman to keep silent under the circumstances of this case. Hypothetically, if we were to reinterpret the elder Doerr's will at this juncture and find that Mrs. Doerr did not possess an absolute interest in the stock, we would never know if the now-deceased Mrs. Doerr would have bequeathed her other property differently had she been aware of an adverse claim to the stock. Thus, it would be impossible to ascertain what those taking under Mrs. Doerr's will should now receive. In other words, the death of Mrs. Doerr was the

pivotal "change in condition" occurring during the period of appellant's unreasonable silence which permits, and indeed compels, us to apply the doctrine of laches. *See, Leedom,* 473 Pa. at 201, 373 A.2d at 1333.

Alternatively, we hold that 20 Pa.C.S.A. section 3521 [4] may, under certain circumstances, bar review of a long-standing decree of distribution in the context of a petition to adjudicate title to personalty under 20 Pa.C.S.A. section 711(17). Section 3521 bars applications for review of a distribution decree which is more than five years old, absent proof that fraud induced the decree or prevented an interested party from seeking review within the five year period. *Thomas,* 495 Pa. at 93, 432 A.2d at 968; *In re Estate of Burger,* 425 Pa. 395, 229 A.2d 463 (1967). Appellant contends that Section 3521 does not operate to preclude reexamination of a distribution decree which is more than five years old *except* where a party has actually filed a petition for review. Common sense dictates that the legislative purpose to ensure finality and certainty of property distributions is best served by application of the statute to any actual review of a prior decree regardless of the procedural posture in which the effective request for review arises.

A long-standing decree may nonetheless be reviewed if fraud is alleged and proven. "The essence of fraud is deceit intentionally and successfully practiced to induce another to part with property or with some legal rights." *In re Thorne's Estate,* 344 Pa. 503, 511, 25 A.2d 811, 816 (1942). Fraud comprises "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether by direct falsehood or innuendo, by speech or silence, word of mouth, or look or gesture...." *Id., quoting Wiley v. Wirbelauer,*

---

**4.** Title 20, section 3521 reads in pertinent part:
> If any party in interest shall, within five years after the final confirmation of any account of a personal representative, file a petition to review any part of the account or of an auditor's report, or of the adjudication, or of any decree of distribution, setting forth specifically alleged errors therein, the court shall give such relief as equity and justice shall require....

116 N.J.Eq. 391, 174 A. 20, 23 (1934). Yet if a complaining party, not acting under duress or reasonable misapprehension, has acquiesced in a proposal which he believes to be wrongfully disadvantageous to himself, he deprives himself of the plea of fraud if he later finds he has been injured. 344 Pa. at 503, 25 A.2d at 811.

■ To warrant review of a distribution decree, the fraud alleged or proven must withal appear to have induced the distribution decree itself or, in the alternative, to have deterred an interested party from seeking review of the decree within the five-year period permitted by the statute. "[A] cause of action arising from fraud is complete when the transaction has ended[;] ... the statute of limitations begins to run at once, unless discovery is prevented by active concealment." *Thorne*, 344 Pa. at 510, 25 A.2d at 815, *citing Dalzell v. Lewis*, 252 Pa. 283, 97 A. 407 (1916). The party claiming fraud and seeking review is charged not only with what he actually knew at the time, but also with with what he should have known through the exercise of reasonable diligence. *Thomas*, 495 Pa. at 93, 432 A.2d at 968; *Thorne*, 344 Pa. at 503, 25 A.2d at 811; *Kinter v. Commonwealth Tr. Co.*, 274 Pa. 436, 118 A. 392 (1922). Thus, in order to justify reconsideration of a distribution decree after the statute has run, a party must prove an intrinsic fraud which has prevented precisely one's exercise of the limited right of review which the statute grants.

■ Instantly, section 3521 precludes us from inquiring into the propriety of the 1973 decree distributing assets of the estate of Frank A. Doerr, Jr., since evidence of the kind of fraud which would justify reopening the decree is lacking. Not even the testimony of appellant himself lends credence to the notion that decedent possessed any intent to defraud her son. (*E.g.*, R. 184.) Nor can constructive fraud be inferred from decedent's failure to give appellant formal notice of the estate audit. The trial court found it "extremely doubtful that Frank E. Doerr lacked actual knowledge of the audit." (Opinion of Zavarella, A.J., at 11.) Appellant had attested to the signature on his father's will,

was an active participant in the administration of his father's estate, and received statutory notice of the filing of the account. *Id.*, at 11–12. As president of Doerr Bros., Inc., he signed the stock certificates which were distributed to decedent pursuant to the decree of distribution. He himself received and signed for Doerr Bros., Inc. stock as part of the distribution of assets in his father's estate. The party claiming fraud and seeking review is charged with what he should have known through the exercise of reasonable diligence. *Thomas,* 495 Pa. at 93, 432 A.2d at 968; *Thorne,* 344 Pa. at 503, 25 A.2d at 811. To maintain that appellant could not easily have discovered any alleged "fraud" strains credulity.[5]

The order is affirmed.

---

5. In view of our determination that appellant is barred from challenging the award of 51% of the stock in Doerr Bros., Inc., we need not reach the question of interpretation of the Will of Frank A. Doerr, Jr.